THE STATE v. E. L. SANFORD, Appellant.—297 S. W. 73.

Division Two, July 13, 1927.

1. **BANK: Insolvent: Prima-Facie Case.** The failure of the bank constitutes prima-facie evidence of knowledge on the part of its president that it was insolvent or in failing circumstances at the time the money was received on deposit. Besides, in this case there was substantial evidence tending to prove actual knowledge by defendant at and prior to the time the deposit was received.

317 Mo. Sup.—55.

2. SUPPLEMENTAL TRANSCRIPT: Organization of Court. The tender and leave to file a supplemental transcript showing that the court in which the prosecution was instituted was organized, that the grand jury was impaneled and that the indictment was returned into court cures the omission of these recitals from the original transcript.

3. INDICTMENT: Insolvent Bank: Reception of Deposit. An indictment charging that defendant as president of a bank, "a certain deposit of money, to-wit, one hundred dollars lawful money of the United States of the value of one hundred dollars, the money and property of Mrs. J. A. Riley, did then and there unlawfully and feloniously assent to the reception of said one hundred dollars in" said bank "after he, the said E. L. Sanford, had knowledge of the fact and well knew that the 'said bank' was then and there insolvent and in failing circumstances," though awkwardly expressed, is substantially in the language of the statute (Sec. 3365, R. S. 1919), and charges that the deposit was actually received by the bank, and that the bank was insolvent and in failing circumstances.

4. ———: ———: ———: Cured by Rest Statute: Trial without Objection. Where defendant was tried without objection to the sufficiency of the indictment, its sufficiency must be measured by the statute (Sec. 3908, R. S. 1919) providing that "no indictment or information shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected. . . . for any other defect or imperfection which does not tend to the prejudice of, the substantial rights of the defendant upon the merits," if the indictment fully informs the defendant of the offense of which he stands charged. And after verdict, an indictment in the language of the statute must be regarded as sufficiently informing the defendant president that the bank was in failing circumstances and that he knew such fact, and that the deposit was accepted by the bank when it was in failing circumstances, and that he assented to the reception of the deposit with such knowledge.

5. INSOLVENT BANK: Bad Notes: Aggregation: Bank Examiner. It is not error to permit a state bank examiner, an experienced bookkeeper and accountant, to state the aggregate amount of the bad notes belonging to the bank, examined by him in the presence of the defendant president and other members of the board of directors and pronounced by them to be bad.

6. ———: Liabilities and Assets: Important Testimony. It being admitted that the deposit mentioned in the indictment was actually made and received by the bank and that the defendant as president assented to its reception, and the only contested issues in the case being the insolvency or failing condition of the bank and defendant's knowledge of such condition, testimony tending to show the extent of the liabilities of the bank, and the nature and value of its assets at the time, and his knowledge thereof, becomes of the utmost importance.

7. ———: Assets: Valuation: Qualifications of Expert: Hearsay. A witness cannot qualify to testify to the value of specific properties by a mere showing that he has previously inquired of persons said to be competent to express an opinion as to such values. A witness's testimony of his recollection of the value put upon property by others is mere hearsay.

8. ———: ———: ———: ———: Assignee. To permit the assignee of a milling company, which owed the bank $112,000 when it failed and other creditors $40,000 six months later when it also failed, to testify that the value of the property of the company at the time the bank failed was: real estate, $22,000 to $25,000; machinery in the mill, $2,000 to $3,000; and machinery on premises, $2,000, is error, where as assignee he sold the bare assets of the company for $32,000, which was $2,000 more than he testifies was

the value of all its properties when the bank failed, and where he shows no knowledge of the value of real estate in the city in which the milling property was, and not the slightest experience with milling machinery, and testifies that his knowledge of the value of the machinery was acquired upon inquiry of experts along that line, since he does not qualify as an expert, and his testimony is hearsay.

9. ———: ———: ———: ———: **Trustee.** To permit a trustee in bankruptcy of a furniture company, which owed the bank alleged to be insolvent $30,000 at the time of its failure in January, to testify that the value of its stock in August was $15,000, and that the value of its book accounts was from $13,000 to $14,000, is error, where his value of the stock is based upon appraisements made by experts, and there is no showing that the stock was the same in August as it was in January, and no adequate showing that he had any knowledge 'of the financial standing of the debtors who owed the book accounts.

10. **INSOLVENT BANK: Knowledge: Valuation of Assets: Erroneous Evidence: Reversible Error.** The admission in evidence of the valuation of the properties of debtors of the bank by a witness who is not a qualified expert, and whose estimates of the value are mere hearsay, though erroneous, is, not reversible error, if there is ample competent evidence from which it may be reasonably inferred that at the time the deposit was accepted the defendant had actual knowledge that the bank was insolvent or in failing circumstances; but where the erroneous evidence tends to show that the notes of such debtors were worth only a small fraction of their face value, and the circumstances indicate that the jury might have seized upon his testimony and applied the same want of value to other notes and assets of the bank and thereby reached the conclusion that defendant had actual knowledge that the bank was insolvent, the admission of such erroneous evidence is reversible error.

11. **EVIDENCE: Repeating Objection.** It is not necessary for counsel continuously to be making objections and savings exceptions to the same character of testimony, after the court by previous rulings has indicated that such objections would be useless.

12. **INSOLVENT BANK: Knowledge: Confined to Time of Deposit.** Care should be taken in all cases to confine the evidence of the defendant's knowledge of the insolvency or failing condition of the bank to the time the deposit was received; and particularly so where a large number of other banks used defendant's bank as a depositary and to which it was required and did make loans, particularly for crop movements, and many loans made by it and the other banks constituted what are known as "frozen assets," or loans on lands at inflated values, which could be fully realized upon in time, but on forced collection would show serious loss.

13. ———: ———: **Value of Assets: Subsequent Developments.** To be guilty under the statute (Sec. 3365, R. S. 1919) of receiving money on deposit in an insolvent bank, knowing it to be insolvent, the defendant must have known that the bank was insolvent or in failing circumstances at the time he assented to the reception of the deposit. He is not chargeable with knowledge at that time of the bank's financial condition as it appeared in the light of later events and subsequent investigations and developments. The fact of actual insolvency and subsequent failure is by the statute made prima-facie evidence that he had knowledge that the bank was insolvent or in failing circumstances at the time the deposit was received; but the question of his actual knowledge is for the jury to determine from all the facts and circumstances in evidence, including the fact of such failure.

14. ———: **Knowledge: As Revealed by Examination.** The bank official cannot be held chargeable with the exact knowledge of the bank's condi-

tion which a fair and disinterested bank examination of its assets and liabilities reveals.

15. BANK: Insolvent Bank: Confidence in Solvency: Jeopardizing Own Fortune. Evidence tending to show that the defendant bank official had complete confidence in the ultimate solvency of his bank, is competent; and the strongest kind of evidence that he had such confidence is the fact that, before the bank failed, he turned over to the bank his entire fortune, including the home he had given to his wife, in an attempt to make his confidence good.

16. ———: ———: Test of Officer's Guilt. In a prosecution of a bank official charged with receiving a deposit when the bank was insolvent or in failing circumstances, the test of his guilt, its insolvency being made manifest by subsequent developments, is his knowledge of its insolvency or failing condition at the time he assented to the reception of the deposit. And the jury should determine his knowledge from his point of view, as well as from all other facts shown by the evidence. He is chargeable with actual knowledge of all facts and circumstances bearing on its solvency which actually existed at the time and which he reasonably should have known; and he is also chargeable with knowledge of the assets of the debtors of the bank which he reasonably should have known by use of the knowledge possessed by him.

17. ———: Instruction: Presumption of Innocence: Knowledge. In a prosecution of defendant for receiving a deposit in an insolvent bank, knowing it to be insolvent, the failure of the bank constitutes prima-facie evidence of his knowledge of the failing circumstances when the deposit was accepted, but such prima-facie evidence does not destroy the presumption of innocence which exists in his favor. Proof of failure of the bank does not shift to defendant the burden of proof on the question of knowledge of the condition of the bank, and an instruction which seems to shift the burden to him, and to deny him the presumption of innocence until he has shown facts tending to exonerate him from criminal liability, is apt to mislead the jury, and should not be given.

18. ———: ———: Circumstantial Evidence. It is not error to refuse to give an instruction on circumstantial evidence where the evidence is not wholly circumstantial.

Corpus Juris-Cyc. References: Banks and Banking, 7 C. J., Section 204, p. 580, n. 28; Section 208, p. 584, n. 72; Section 209, p. 585, n. 83. Criminal Law, 16 C. J., Section 1233, p. 622, n. 12; Section 1532, p. 748, n. 53; p. 749, n. 60; Section 1551, p. 755, n. 94; Section 2201, p. 878, n. 38; Section 2388, p. 983, n. 27; Section 2433, p. 1009, n. 6; 17 C. J., Section 3674, p. 332, n. 54; Section 3751, p. 368, n. 5. Indictments and Informations, 31 C. J., Section 563, p. 882, n. 51.

Appeal from Benton Circuit Court.—*Hon. C. A. Calvird*, Judge.

Reversed and remanded.

*O. E. Gorman, W. E. Owen* and *Henry P. Lay* for appellant.

(1) The indictment is absolutely defective, because it fails to allege (a) that the deposit was in fact received by the bank, and (b) that at the time the bank was, in fact, insolvent or in failing circumstances. Fleming v. State (Tex.), 139 S. W. 598; State v. Hubbard, 170 Mo. 346; State v. Phelan, 159 Mo. 122. (2) It was not only material but gross error to permit the witness Bushnell to testify to the

conclusions he drew from his interview with the board of directors of whom the defendant was one : to his understanding of the result of that conference when he had not testified in detail to the conversations; had not presented the notes discussed; had not even offered his memorandum which he testified he had made, in evidence; thus permitting the witness, by his opinion, not supported by any tangible facts, to usurp the province of the jury. 22 C. J. 515, 516. The normal function of a witness is merely to state facts within his personal knowledge, and under normal circumstances his opinion or conclusion with respect to matters relevant to the issue cannot be received. 22 C. J. 485. (3) It was material error to permit witness Cahill to testify to the value of the machinery of the Interstate Milling Company without qualifying as an expert, and basing his testimony upon the *ex parte* statements, mere hearsay, of "an expert machinery man" who appraised the machinery, but who was not offered as a witness. The result was the mere conclusion of the witness based upon the hearsay of some "expert" who was not named, produced or submitted to cross-examination. But even worse than this the same witness, over the proper objections of the defendant, was permitted to testify as to the sum realized from the sale of the assets of this company under forced sale. (4) It was material error to permit the witness Cahill to testify that the reasonable value of the book accounts of the Ferguson Furniture Co. was $13,000 or $14,000, the book accounts having not been offered in evidence and the witness not having shown any knowledge of the condition of the debtors or the debts to permit him to testify as an expert. (5) Instruction 4 is very material error : Clearly this instruction deprives the defendant of his presumption of innocence, and leads the jury to believe that the burden of proof is on him to prove his innocence. Which is still error. 16 C. J. 987, note 74. The defendant has the right to stand mute, and require the State to prove his guilt beyond a reasonable doubt; he cannot be required to disprove his guilt. It seems clear to us that it can only mean to a jury that under the law the defendant is guilty, reserving to him the right, if he can, to prove his innocence, and then, and not until then, he again becomes clothed with the presumption of innocence.

*North T. Gentry*, Attorney-General, and *W. F. Frank*, Assistant Attorney-General, for respondent.

(1) The indictment properly charges assent to the reception of a deposit in an insolvent bank after having knowledge of such insolvency. Sec. 3365, R. S. 1919; Kelly's Criminal Law (3 Ed.) sec. 719; State v. Buck, 108 Mo. 625; State v. Buck, 120 Mo. 486; State v. Sattley, 131 Mo. 482; State v. Lively, 279 S. W. 78. (2) No error was committed in the admission and rejection of evidence. (3)

Appellant's complaint against the giving of Instructions 1, 2, 3, 4, 5 and 12 is without merit. Similar instructions have been approved by this court. State v. Burlingame, 146 Mo. 207; State v. Darrah, 152 Mo. 522; State v. Sattley, 131 Mo. 490; State v. Buck, 120 Mo. 487; State v. Lively, 279 S. W. 76. No objection is made to other instructions given.

BLAIR, J.—Appellant was convicted upon the second count of an indictment which charged him with assenting to the reception of a deposit of one hundred dollars in the Holland Banking Company, a banking institution doing business at Springfield, in Green County, knowing that said bank was at the time insolvent and in failing circumstances.

The venue was changed to Benton County, where trial was had. The jury found appellant guilty as charged in the second count of the indictment and assessed his punishment at imprisonment in the penitentiary for a term of four years. Motions for new trial and in arrest of judgment were ruled adversely to the appellant, and he appealed to this court from the judgment entered on the verdict.

It will not be necessary to state the facts at length because counsel for appellant concede that a case was made for the jury. On January 15, 1924, pursuant to resolution of its board of directors and in response to a request made by appellant, the assets of the Holland Banking Company were taken over by C. E. Bushnell, a bank examiner of the Department of Finance of this State. On January 11, 1924, or four days before the bank was closed, Mrs. J. A. Riley deposited one hundred dollars in said bank. It is admitted that appellant assented to the acceptance of such deposit. It is also conceded that there was substantial evidence tending to show that the bank was in failing circumstances at the time said deposit was accepted. The failure of said bank constituted prima-facie evidence of knowledge on the part of appellant that the bank, of which he was president, was insolvent or in failing circumstances when said deposit was accepted. [Sec. 3365, R. S. 1919.] There was also substantial evidence tending to prove actual knowledge of that fact on the part of appellant at and prior to the time such deposit was received. Thus a case for the jury was made out under said Section 3365.

I. The first assignment of error is that the record does not disclose that the Greene County Criminal Court was organized, that the grand jury was impanelled or that the indictment was returned into court. Consideration of the merits of this assignment is rendered unnecessary, for the reason that, since Curing Defective Transcript. the cause was submitted here, the clerk of said court has tendered, and we have given leave to the filing of, a supplemental transcript of the record by which all of such facts are properly shown.

II. Appellant contends that the indictment does not state facts sufficient to constitute an offense. This assignment is based upon the contention, *first,* that the indictment fails to allege that the deposit was in fact received by the bank, and *second,* that the in-

*Indictment.* dictment fails to allege that the bank was in fact insolvent or in failing circumstances at the time the deposit was received. The second count of the indictment was as follows:

"And the grand jurors aforesaid, empanelled, sworn and charged as aforesaid, upon their oath aforesaid do further present and charge that the said E. L. Sanford on the 11th day of January, 1924, at the County of Greene and State of Missouri, being then and there president of Holland Banking Company, a corporation, duly organized and existing under the laws of the State of Missouri, the same being then and there a banking institution doing business in the city of Springfield, county and state aforesaid, a certain deposit of money, to-wit: One hundred dollars lawful money of the United States of the value of one hundred dollars, the money and property of Mrs. J. A. Riley, did then and there unlawfully and feloniously assent to the reception of said one hundred dollars from the said Mrs. J. A. Riley in said Holland Banking Company, after he, the said E. L. Sanford, had knowledge of the fact and well knew that the said Holland Banking Company was then and there insolvent and in failing circumstances, and so the said E. L. Sanford, the money aforesaid, to-wit: One hundred dollars, lawful money of the United States of the value of one hundred dollars, the money and property of the said Mrs. J. A. Riley, in the matter and form aforesaid, did then and there unlawfully and feloniously steal, take and carry away, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State."

The allegation respecting the reception of said deposit with the assent of appellant is rather awkwardly worded, but substantially conforms to the language used in Section 3365, Revised Statutes 1919. That section denounces two offenses. One is the reception of the deposit personally by the officer of the bank and the other offense is for the officer to "assent to the reception of any deposit . . . after he shall [have] had knowledge of the fact that such banking institution . . . is insolvent or in failing circumstances." Both of the allegations in the indictment, criticised as insufficient, are substantially in the language of the statute. Of course, the jury must find as a fact that a deposit of thirty dollars or more was actually accepted and that the bank was insolvent or in failing circumstances at that time. The jury could not truthfully find the facts charged in the indictment without finding that the bank was insolvent or in failing circumstances and that a deposit was in fact accepted.

Indictment in all respects substantially the same as the indictment before us were approved in State v. Buck, 108 Mo. 622, and State v. Buck, 120 Mo. 479. In the first Buck case it was specifically urged that the indictment, which was similar in this respect to the one now before us, did not charge "that defendants as owners of the bank were previously insolvent or in failing circumstances." While Judge MACFARLANE did not discuss this particular objection to the indictment, he held that it was good in all respects. That general ruling constituted a disallowance of the criticism to which we have referred. See also the information approved in State v. Lively, 311 Mo. 414.

Appellant cites Fleming v. State (Tex.), 139 S. W. 598; State v. Hubbard, 170 Mo. 346; State v. Phelan, 159 Mo. 122. In the Fleming case from Texas the prosecution was based on a statute identical with our Section 3365 in the particulars with which we are here concerned. The indictment was held bad because it "did not allege affirmatively that the bank was insolvent at the time of the reception of the deposit." The defect found was as to time of the insolvency and not as to the sufficiency of the form of the allegation of insolvency. We are not impressed with the soundness of this part of the opinion in the Fleming case and do not regard it as presuasive upon the point, especially as one of the three judges of the Criminal Court of Appeals of Texas inclined "to the opinion that the indictment is sufficient."

State v. Hubbard was a prosecution for obtaining a loan under false pretenses. An allegation that Liggett "was induced by the false pretenses to loan the said Walter Hubbard" the money in question was held to be insufficient on the ground that the indictment should have charged that Liggett did make the loan. The fact that the indictment before us is in the language of the statute sufficiently distinguishes the Hubbard case from the case at bar. The Phelan case constituted the authority for the ruling relied upon in the Hubbard case and may be similarly distinguished.

Appellant went to trial without objection to the sufficiency of the indictment and its sufficiency must now be measured by Section 3908, Revised Statutes 1919, which provides that "no indictment or information shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected . . . for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits," provided the indictment fully informs the defendant of the offense with which he stands charged.

After verdict the indictment must be regarded as sufficiently informing the appellant that the bank was in failing circumstances and that he knew such fact and that a deposit was accepted by the bank when it was in such failing circumstances and that appellant assented

to the acceptance of such deposit with such knowledge. The substantial rights of appellant on the merits were not in any wise prejudiced by the allegations of the indictment covering such facts necessary to be shown, particularly since those allegations were made in the precise language of the statute.

III. Complaint is made because the trial court permitted Bank Examiner Bushnell to testify as to the amount of alleged bad notes found in the bank when he took charge. Mr. Bush- nell testified that he had made a list of the notes and other paper found in the bank after he took charge and that he went over this list with certain officers and directors of the bank. Appellant was present at the time and participated in the conference. Bushnell took up each item and inquired of the appellant and the others present whether the particular item was good, bad, doubtful, etc. He made memoranda at the time and made up his calculations therefrom. The particular question objected to, and the only circumstance where any exception was saved to the ruling of the trial court, was as follows:

*Calculations: Bad Notes.*

"Q. From the information furnished you at that time, in Mr. Sanford's presence, how—what was the total amount of the notes furnished you—the bad notes?

"MR. LAY: Object, if your Honor please, to the conclusion of the witness.

"THE COURT: Objection overruled.

"To which ruling the defendant then and there excepted; and now excepts.

"A. The amount of the loans, as shown by my sheets here, on the information received from the board of directors—the loans, personal and collateral—a million, two hundred and eighty thousand, a hundred and thirty seven dollars and twenty six cents, considered bad.

"Q. How much? A. $1,280,137.26."

Bushnell was thirty-eight years of age and had been a bank examiner for three and a half years and for fifteen years before that had been engaged either as a bookkeeper, teller or cashier in a bank. No objection was made as to his qualifications as an expert book- keeper and accountant. It was apparent from the examination pre- ceding the questions and answers above set out that the witness was not attempting to give his own opinion of the value of any of the notes or other paper. As shown by his answers quoted, he was merely testifying to the result of his additions of the items pronounced bad by appellant or by other persons in appellant's presence. In testify- ing to the result he was not testifying to his own conclusions as to the total amount of bad notes in the bank. Appellant has cited no authority in support of his assignment of error and we find no merit therein.

IV.   It as admitted and at appellant's request the court instructed the jury (Instruction 7) that on January 11, 1924, the deposit mentioned in the indictment was actually made and received by said bank and that appellant assented to the reception of said deposit.   The only contested issues of fact in the case were the insolvent or failing condition of the bank on January 11, 1924, and appellant's knowledge of such condition.   For that reason, the testimony tending to show the extent of the liabilities of the bank and the nature and value of its assets and appellant's knowledge thereof was of the utmost importance in the case.

**Testimony as to Values.**

.  (a)   Appellant earnestly contends that the trial court erred in admitting the testimony of witness Cahill as to values.   Interstate Milling Company owed the bank over $112,000 when the bank failed, and owed about $40,000 to other creditors six months later when the milling company likewise failed.   Over the objection and exception of the appellant, Cahill was permitted to testify to the values of the property of the milling company in January, 1924, as follows:   Real estate, including mill building, $22,000 to $25,000; machinery in the mill, $2,000 to $3,000; value of machinery on leased premises, $2,000.   Cahill also testified that, as assignee of Interstate Milling Company, he had sold its assets and realized $32,000 to $33,000.

**Hearsay.**

On the basis of this testimony the milling company's property was worth about $30,000 on January 11, 1924.   Its total indebtedness amounted to over $150,000 and a value of less than twenty-five cents on the dollar was indicated for the indebtedness of over $112,000 due the bank from said milling company.   Thus the importance of a proper showing that witness Cahill was qualified to testify concerning such values is quite apparent.   His qualifications were strenuously challenged by appellant.   He showed experience of land values in Greene County, but no particular acquaintance with values of real estate in the city of Springfield, where the real estate of the milling company was situated.

. ˙ Cahill undertook to testify as to the values of machinery without the slightest showing of experience in such values.   He testified from knowledge acquired upon inquiry of alleged experts in that line.   Total values, according to his testimony and as of January 11, 1924, were less than the amount realized by him many months later when the bare assets of the milling company were disposed of by him as assignee.

.  Mr Cahill was also trustee in bankruptcy for Ferguson Furniture Company, which owed the bank $30,000 when its doors were closed.   He was permitted to testify that the value of the stock in August, 1924, was $15,000, and that this was based upon appraisements which he had caused to be made by experts.   There was not even a

showing that the stock was the same in August as it was in January; he was permitted to testify that the value of the book accounts of the furniture company was $13,000 to $14,000, without any adequate showing of knowledge on his part of the financial standing of any of the debtors of said furniture company.

Neither appellant nor the State has cited any authorities 'in support of the respective contentions concerning the propriety of Cahill's said testimony. The learned Attorney-General has contented himself with the bare assertion that no error was committed in the admission or exclusion of testimony. Counsel for appellant argue that the impropriety of admitting Cahill's opinion on values of property, when no showing was made touching his qualifications to give such opinion, is too plain to require the citation of authorities. Counsel even intimate that no trial court ever before had the hardihood to admit testimony of such character, and that this accounts for the paucity of authority directly on the point.

There is much other testimony by Cahill, as well as of other witnesses, which was fairly subject to the same objection. Objections were made several times and exceptions sayed. We have repeatedly ruled that it is not necessary for counsel continually to be making objections and saving exceptions as to the same character of testimony, to a defendant's prejudice before the jury, after the court has indicated by previous rulings that such objections would be useless. Besides, the record in this case discloses an understanding between the court and counsel that objections to that class of testimony need not be continually repeated.

We are satisfied that Cahill's qualifications to testify as an expert as to the values of milling machinery and stocks of furniture was not properly shown in order to make him a competent witness upon such subjects. His knowledge of real estate values was probably established sufficiently to entitle his testimony to the consideration of the jury. But if this or any other court has ever ruled that a witness may qualify to testify as to values by the mere showing that he had previously inquired of persons said to be competent to express an opinion of such values, we are not aware of such ruling. Cahill's testimony of values of milling machinery and furniture stock amounted to nothing more than his recollection of values put upon such property by others. It was mere hearsay.

In so far as the value of the accounts of Ferguson Furniture Company fixed by Cahill is concerned, the trial court permitted Cahill to testify to such value without requiring any showing of a study or investigation of such accounts by the witness. He was not required to show what efforts he had made to collect the accounts or what investigation of the solvency of the debtors he had made. The value of the accounts on January 11, 1924, was not shown: The admission of

this testimony was also improper, at least upon the showing made by the State.

(b) It does not necessarily follow, however, that the admission of this particular testimony constitutes reversible error. We will proceed to examine the assignment of error from that viewpoint. In doing so it must be kept in mind that the testimony **Knowledge.** above set out, while of outstanding character as an illustration, is not the only testimony of the kind which was admitted for the consideration of the jury.

If we were permitted to view the question of the bank's solvency in the light of events as they developed upon careful investigation subsequent to the receipt of the deposit forming the basis of the charge against appellant, we doubtless would be justified in saying that there was such an abundance of proof of the bank's insolvency at the time the deposit was received that the proof complained of could have been eliminated from consideration entirely and still the proof of insolvency would be ample. In the light of subsequent events, it is disclosed that the excess of appellant's personal liabilities to the bank over his personal assets, together with other losses on notes and other paper of the bank, had impaired and, in fact, completely wiped out the capital stock and surplus of the bank and left its assets far short of equalling its liabilities. In other words, in the light of subsequent events and investigation, the bank's actual insolvency on January 11, 1924, without considering Cahill's testimony challenged here, is abundantly shown. In the light of such subsequent investigation and events, it seems quite clear that the bank was in failing circumstances on January 11, 1924. It does not appear that this was the result of defalcations on the part of appellant or other officers of the bank. It doubtless was due in large measure to deflation in land values throughout the territory served by the Holland Banking Company. That institution had about one hundred and twenty country banks which used it as a depositary and to which it was required to and did loan money, particularly for crop movements. Loans made to such banks by the Holland Banking Company were in turn loaned by such banks to their own customers. Hundreds of thousands of dollars of loans made by the Holland Banking Company and its associated banks constituted what has been termed "frozen assets," that is, assets which could probably be fully realized upon in time, but which, on forced collection, show serious loss. Some of the loans made were no doubt improvident when made, in that they were made upon inflated land values. When deflation in land values had been accomplished, the market value of the security was, in many instances, less than the loan. Large actual losses of this kind occurred. Hence, it might well be said that the admission of Cahill's testimony complained of was not prejudicial on the question of the actual financial condition of the bank on January 11, 1924,

when the deposit was received by the bank with the assent of the appellant.

But, to be guilty of violating Section 3365, appellant must have known that the bank was insolvent or in failing circumstances at the time he assented to the reception of the deposit. Manifestly, and in common justice, appellant was not chargeable at that time with knowledge of the financial condition of the bank as it appeared in the light of later events and subsequent investigation. His culpability in assenting to the reception of the deposit must be measured by what he knew or reasonably should have known concerning the solvency of the bank when the deposit was accepted. The fact of actual insolvency and subsequent failure of the bank is by Section 3365, Revised Statutes 1919, made prima-facie evidence that appellant had knowledge that the bank was insolvent or in failing circumstances at the time the deposit was received. But the question of his actual knowledge was for the jury to determine from all the facts and circumstances in evidence, including the fact of such failure.

The position of an officer of a state bank with respect to the reception of deposits is not an enviable one whenever there is any question of the impairment of the assets of his bank. If there is any possibility that his bank may subsequently be deemed insolvent, through its failure to realize on assets whose immediate value is affected by temporary conditions, acceptance of deposits is perilous because the statute makes the subsequent failure prima-facie evidence of his knowledge of such insolvency. If, out of abundance of caution, he refuses to accept a deposit, he may just as well call his board of directors together and send for the Commissioner of Finance to come and take charge of his bank. Such course might cause unnecessary loss to other depositors and his stockholders. He is torn between fear of the penitentiary and duty to his bank and its depositors. In such situation, the bank official cannot justly be held chargeable with the exact knowledge of his bank's condition which a fair and disinterested bank examiner might acquire by carefully going over the assets and liabilities of the bank. Certainly such officer cannot be held to the same knowledge of the exact condition which is disclosed to the liquidating officer who only comes on the scene after disaster has overtaken the bank.

Here the evidence offered by appellant tended to show that he had complete confidence in the ultimate solvency of his bank. Every dollar he had, and even the home he had given to his wife, were sacrificed in an attempt to make good such confidence. Most of appellant's fortune, whether or not it was as large as he thought it was is immaterial, was tied up with the fortune of the bank before it was turned over to the Commissioner of Finance.

That constituted the strongest sort of evidence of his belief in the solvency of his bank. Whether he was justified in his belief or not is beside the question. The test fixed by the statute is knowledge of insolvency or knowledge that his bank is in failing circumstances at the time he assented to the reception of the deposit. The jury had the right and duty to pass upon the question of knowledge from appellant's point of view, as well as from other facts shown in evidence. Concededly appellant was chargeable with actual knowledge of all facts and circumstances bearing on the solvency of his bank which actually existed at the time and which he reasonably should have known. He was chargeable with such knowledge of the assets of the debtors of his bank, as he reasonably should have known by use of the means of knowledge then possessed by him.

It at once appears how careful the trial court should be to admit only competent testimony tending to show the value of the assets of the bank at the time the deposit was received. Cahill's testimony tended to show that the notes or other evidence of indebtedness of the Interstate Milling Company and the Ferguson Furniture Company were worth only a small fraction of their face value. Cahill's qualifications to testify to the value of the substantial part of the assets of said debtors was not shown and his testimony in such particulars was not properly admitted. The jury, very likely none too friendly toward the appellant at best because of the nature of the charge, might have seized upon that piece of testimony and applied the same alleged want of value to other notes and similar assets of the bank and charged appellant with knowledge thereof. It is impossible to say that the error in admitting such testimony was not prejudicial to appellant's defense upon the question of appellant's knowledge of insolvency of his bank when he assented to the deposit in question. We regard its admission as reversible error.

V. The giving of instructions numbered 2, 3 and 4 has been assigned as error. Instructions 2 and 3, either separately or combined in one instruction, have been specifically approved. See State v. Lively, 311 Mo. 1. c. 436, and cases cited and discussed.

Instruction 4 was as follows: "The court instructs the jury that although by the statute the failure of the Holland Banking Company is made prima-facie evidence of the knowledge on the part of the defendant that the same was in failing circumstances on the 11th day of January, 1924, yet the burden of proving the State's case is not really changed. The defendant can show the con-

Presumption of dition of the bank and the circumstances attending
Innocence. the failure, and any facts tending to exonerate him
from criminal liability, and then on the whole case the burden still rests on the State to establish defendant's guilt beyond a reasonable

doubt. The presumption of innocence with which the defendant is clothed never shifts, but abides with him throughout the case, not-withstanding a prima-facie case may have been made out by the State.''

The criticism of said instruction made by appellant is that ''it seems clear to us that it can only mean to such a jury that under the law the defendant is guilty, reserving to him the right, if he can, to prove his innocence, *and then,* and not until then, he again be-comes clothed with the presumption of innocence.''

While the failure of the bank constituted prima-facie evidence of knowledge on appellant's part of the failing circumstances of the bank when the deposit was accepted, such prima-facie evidence did not destroy the presumption of innocence which existed in appel-lant's favor. The burden was still upon the State, under all the facts and circumstances in evidence, including the proof of the failure of the bank, to prove beyond a reasonable doubt that appel-lant had knowledge that the bank was insolvent or in failing cir-cumstances when the deposit was accepted with his assent. Proof of the failure of the bank did not in any wise shift to appellant the burden of proof on the question of his knowledge of the condition of the bank. Because of the possibility that the jury might misunder-stand the meaning evidently intended to be conveyed by Instruc-tion 4, the second sentence thereof should be carefully rewritten or omitted altogether upon another trial.

VI. Appellant charges the trial court with error in refusing prop-er instructions requested by him. The point has not been pressed in his brief. An examination of the motion for new trial discloses that complaint was made to the trial court of the refusal of re-quested Instructions A, B, C and D. The first three instructions were demurrers to the State's evidence and to all the evidence. Ap-pellant now concedes that a case was made for the jury. Instruc-tion D was upon the subject and the effect of circumstantial evi-dence. No error was committed in refusing to give that instruction, because the evidence in the case was not wholly circumstantial.

VII. We have considered all of the assignments of error made in the brief by able counsel which we deem necessary to consider at this time. For error in the admission of testimony of witness Cahill, as above indicated, the judgment is reversed and the cause remanded for another trial. *Walker, J.,* concurs; *White, P. J.,* not sitting.