EVA COVINGTON GRAF, RESPONDENT, v. R. L. ALLEN ET AL., DEFENDANTS, E. E. SWINK, E. J. HARRINGTON AND BESSIE BRADY, ADMINISTRATRIX OF THE ESTATE OF THOMAS H. STAM, DECEASED, APPELLANTS.—74 S. W. (2d) 61.

St. Louis Court of Appeals. Opinion filed July 10, 1934.

*B. H. Marbury, Harry O. Smith, J. O. Swink* and *Finch & Finch* for appellants.

*S. D. Flanagan* for respondent.

McCULLEN, J.—This suit was brought by respondent, hereinafter referred to as plaintiff, against the president, three directors, the cashier and the bookkeeper of the St. Francois County Bank, hereinafter referred to as defendants, to recover the sum of $3,014.29, alleged to be the balance due on a deposit made in that bank on April 12, 1924, by plaintiff's father, who was then her statutory guardian. The action was brought under sections 5381 and 5382, Revised Statutes of Missouri, 1929 (Mo. St. Ann., secs. 5381 and 5382, pp. 7600, 7602). A trial before Honorable Robert I. Cope, Special Judge of the Circuit Court of St. Francois County, and a jury resulted in a verdict and judgment for plaintiff and against all the defendants except Amanda Giessing, the bookkeeper, in the sum of $4,465.31. Three of the defendants, E. E. Swink, E. J. Harrington, and Bessie Brady, Administratrix of the estate of Thomas H. Stam, deceased, filed a motion for a new trial, which being overruled, they have brought the case to this court by appeal.

Plaintiff's amended petition alleged that her father, J. A. Covington, was her statutory guardian, duly appointed by the Probate Court of St. Francois County, Missouri, and was such guardian until plaintiff became of the age of twenty-one years on February 19, 1928; that after plaintiff attained her majority her father, as guardian, made final settlement with said probate court of his said guardianship and delivered to plaintiff all money, credits and choses in action, including the debt and claim on which this suit is based. The petition alleged that on April 12, 1924, defendants were directors, managers, cashier, officers and agents of the St. Francois County Bank, a banking corporation organized under the laws of Missouri and doing business at Farmington, in St. Francois County, Missouri; that defendant R. L. Allen was president of said bank, and defendants E. E. Swink, T. A. Stam and E. J. Harrington were directors, managers, agents and officers thereof; that defendant W. L. Bess was cashier, and that defendant Amanda Giessing was the bookkeeper of said bank.

The petition alleged that on said 12th day of April, 1924, plaintiff's said guardian deposited in said bank the sum of $6500, the property of plaintiff, and with the knowledge, consent and cooperation of the defendants and each of them, created a debt of said bank in favor of plaintiff, through the agency of her said guardian.

Plaintiff alleged that on said 12th day of April, 1924, and for a period of six months prior thereto, said bank was insolvent and in failing circumstances; that each and every one of the defendants had knowledge thereof, and that each said defendant, after having

knowledge of the fact that the bank was insolvent and in failing circumstances, received and assented to the reception of said deposit, and created and assented to the creation of a debt of said bank to plaintiff in said sum of $6500.

Plaintiff's petition further alleged that by virtue of the provisions of section 11763, Revised Statutes of Missouri, 1919, now section 5381, Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 5381, p. 7600), each and every defendant is individually liable to plaintiff for said deposit and for the debt of said bank so created.

The petition then alleged that no part of said debt has ever been paid except $2,166.77 paid on July 11, 1925; $866.67 paid on December 12, 1925; $381.37 paid on January 10, 1927, and $71 paid on April 15, 1930, and that the sum of $3,014.29 of the principal sum is due and remains unpaid; that defendants refused to pay the same after lawful demand therefor had been made. Judgment was prayed for in the sum of $3,014.29, with interest thereon at six per cent per annum from May 23, 1924.

The answer of defendants admitted the death of Thomas H. Stam and that Bessie Brady is and was the duly appointed and acting administratrix of his estate; admitted that on and prior to April 12, 1924, the St. Francois County Bank was a banking corporation under the laws of Missouri, doing a general banking business in Farmington, Missouri; admitted that at all times mentioned in plaintiff's petition defendants R. L. Allen, E. E. Swink, Thomas H. Stam and E. J. Harrington were the duly elected, qualified and acting directors of said bank.

Further answering, defendants denied each and every allegation in plaintiff's petition.

The appointment of Honorable Robert I. Cope as Special Judge to try the case was agreed to by stipulation, all objections or irregularities being waived and all parties consenting that he should try the cause.

Defendants contend that plaintiff's petition fails to state a cause of action, in that the petition was filed on October 7, 1930, more than six years after May 23, 1924, the date on which the bank closed its doors; that the three year Statute of Limitations, section 863, Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 863, p. 1150), began to run from the date of the closing of the bank, and the action was, therefore, barred by the statute.

This point must be ruled against defendants. The petition alleges that plaintiff was a minor and did not become of age until the 19th day of February, 1928. Plaintiff was, therefore, a minor on May 23, 1924, the day the bank closed. The Statute of Limitations did not begin to run against plaintiff until she reached her majority on February 19, 1928. The petition, having been filed on October 7,

1930, was within the three year period after plaintiff's disability was removed. The petition was, therefore, filed in time and was not barred by the statute. [Section 868, R. S. Mo. 1929, Laws of Mo. 1933, p. 190 (Mo. Stat. Ann., sec. 868, p. 1156).]

Defendants contend that the court committed errors in the admission of testimony given by plaintiff's witness R. H. Davis, Special Deputy Finance Commissioner of Missouri, who took charge of the affairs of the bank for liquidation purposes after it closed. While this witness was on the stand defendants made many objections, some of which were sustained, while others were overruled by the court. It would serve no useful purpose and unnecessarily lengthen this opinion if we were to set forth here in detail the various portions of the testimony of this witness which defendants contend the court erroneously admitted. We shall, therefore, refer only to such portions of it as may be necessary to decide the points raised.

Defendants urge that the court erred in permitting Mr. Davis to testify that he was unable to locate any property belonging to several persons designated in the evidence as the "Kansas City crowd." The witness testified that when he took charge of the bank he made an investigation to determine the value of its assets, and made efforts to collect on the notes which the bank held, and in that connection wrote letters to the bank's debtors. He stated that he personally interviewed some of the bank's debtors and made trips to various points in Missouri to investigate the value of the bank's assets, as well as the solvency of its debtors. Mr. Davis' testimony showed that he was unable to collect these notes by correspondence. He received no replies to his letters, most of them having been returned to him undelivered. He stated that his investigation disclosed "that none of these people had any property." He was asked: "Did you discover that they had any property on the 12th day of April, 1924?" And answered: "No, sir." He testified that the investigations were made by him after he took charge of the bank in June, 1924. The objection was made that this testimony did not show, or tend to show the condition of the bank on April 12, 1924, the date the deposit was made, or on May 23, 1924, the date the bank was closed.

It is argued by defendants that the mere fact that the witness was unable to locate any property belonging to the debtors did not, in any manner, prove that the debtors were insolvent, or that their notes were of no value. The witness testified to more than the mere fact of inability to collect on the debts mentioned. Defendants overlook the testimony showing the investigations and efforts to collect from the debtors in question, made by the witness. We believe that the testimony of this witness to the effect that although he made investigations for the purpose of discovering their property, if any, he was unable to find that the debtors in question had any property

on the 12th of April, 1924, had probative value as to the condition of the bank on that date with respect to its solvency. Mr. Davis was an officer of the State, charged with the duty of enforcing collection of any indebtedness due the bank, and the evidence shows that he made investigations to locate the bank's debtors and any property that they might have owned from which the debts due the bank could be collected, and that he was able, during the whole term of his administration of the bank's affairs, as liquidating officer, covering a period of six years, to collect only $50 on the notes of the Kansas City crowd, totaling in amount $50,875.86. We believe the testimony was admissible.

Defendants next complain that the court erred in permitting witness Davis to testify to the value of the collateral securing the note of Floyd S. Stratton. The witness stated that he made a trip to Chariton County, Missouri, to investigate the value of this collateral and found that it was, "perfectly worthless. It was on real estate the Missouri River had encroached upon and it was actually in the River. The lands had been stricken from the assessment rolls of the county, it was no longer assessed for taxes, and had not been for four or five years."

We are of the opinion that this testimony was admissible on the issue of the insolvency of the bank. We find nothing in the cases of State v. Sanford, 317 Mo. 865, 297 S. W. 73, and State v. Walser, 318 Mo. 833, 1 S. W. (2d) 147, cited by defendants, which would authorize us to hold such testimony inadmissible.

Defendants next complain that the court committed error in admitting the testimony of Mr. Davis as to the value of the stock of Moore's Laboratories, which was held by the bank as collateral to secure a $4500 note of R. M. Stout. This testimony was objected to by defendants on the ground that it was not proper evidence tending to show the solvency of the bank as of April 12, 1924. The witness testified that he made the investigation of the collateral in question in the summer of 1924. He was asked by the court whether or not he made inquiry as to the value thereof on April 12, and said that he made no specific inquiry as to that date, but his information was that it had not been of any value for some time. Before permitting this part of the testimony of the witness to stand, the court required a showing of the kind of investigation which the witness had made concerning the collateral in question, and the witness testified that he discussed the matter with bankers and real estate men in Kansas City, where he was conducting his investigations; that they said they were familiar with the stock and that it was of no value. He testified further that he undertook afterwards to sell the stock but was unable to sell it for any price whatever.

Defendants contend that the witness' statement as to the value of the collateral mentioned was purely hearsay and was not competent to show insolvency of the bank, or knowledge thereof on the part of the directors. They again cite State v. Sanford, supra, and State v. Walser, supra. We are unable to find anything in either of these cases to support the contention of defendants in this respect.

In State v. Darrah, 152 Mo. 522, 54 S. W. 226, the State prosecuted a director of a bank on a charge of receiving deposits with knowledge that the bank was insolvent. The defendant in that case requested an instruction telling the jury that if they found that any witness had given an opinion as to the value of any assets, and that such opinion was based solely upon information obtained from others by means of correspondence, then they were at liberty to disregard such evidence.

The refusal of such instruction was assigned as error in the Supreme Court on appeal. Answering this contention, the Supreme Court said:

"We do not think the court committed error in admitting this evidence and in refusing this instruction. The objection is of course that the opinions were formed upon hearsay, and is well answered by an eminent author as follows: 'Value, it must be remembered, consists in the estimate, in the opinion of those influencing a market, attachable to certain intrinsic qualities belonging to the article to be valued. The opinion of such persons can only be presented, in most cases, by hearsay. . . . Hence it is that it is no objection to the evidence of a witness testifying as to the market value that such evidence rests on hearsay. . . . [Wharton on Evidence (3 Ed.), sec. 449.]'" [State v. Darrah, 152 Mo. 522, 542, 54 S. W. 226.]

We are of the opinion that there was no reversible error in admitting the testimony complained of.

The next contention of defendants is that it was prejudicial error for the trial court to admit the testimony of witness Davis to the effect that he was able to collect only $50 on notes aggregating $50,875.86 following the closing of the bank. To support this contention, defendants rely on Arndt v. Frye (Mo. App.), 20 S. W. (2d) 920. We are unable to find anything in the case cited that holds such character of testimony to be inadmissible. In the case of State v. Walser, 318 Mo. 833, 1 S. W. (2d) 147, the defendant therein was charged with receiving a deposit for the bank, knowing the bank to be insolvent and in failing condition. Being convicted, he appealed to the Supreme Court. One of the grounds of error assigned in that court was that witnesses for the State had been permitted to testify that they had not collected certain notes belonging to the bank. The court held that the admission of such testimony was prejudicial error because there was no showing upon the part of the witnesses

that they had made a sufficient effort to collect such notes. The court, in that case, said the evidence went no farther than tending to show that some of the notes had been sent to an attorney for collection. In its opinion in that case the Supreme Court clearly indicated that if a showing had been made therein of the efforts to collect the notes, the testimony complained of would have been admissible.

In the case at bar Mr. Davis testified at considerable length, showing the investigations which he had made, and the efforts put forth by him to collect the notes in question. We think this testimony, showing that despite all his efforts he was able to realize the small sum of $50 from notes totaling $50,875.86, was competent evidence tending to show insolvency of the bank, and admissible in view of the Supreme Court's language in the case of State v. Walser, supra.

Defendants next contend that the court erred in permitting the witness M. P. Cayce to testify that notes held as assets of the bank, and offered as collateral for a loan applied for by the bank, were not accepted. We think this evidence was admissible as tending to prove that the bank was insolvent and that the directors had knowledge thereof by showing that during the period from April 4, to April 10, 1924, preceding by only a few days the deposit involved herein, the bank itself was unable to raise funds to meet its obligations. The testimony showed that the bank's remittances to the Federal Reserve Bank had been falling behind from January, 1924, and that on April 2, 1924, the bank had drafts outstanding amounting to $7,920.91, and that it did not have sufficient funds on deposit in the banks on which said drafts were drawn to meet them. During this period the directors of the bank pledged their personal credit to secure a loan for the bank after the bank had tried to obtain a loan for itself, but had failed. The testimony of Mr. Cayce was unquestionably admissible on the question of solvency. The general rule is stated in 7 C. J. 727, as follows:

"A bank is solvent when it has enough assets to pay, within a reasonable time, all of its liabilities through its own agencies, and is insolvent when unable to meet its liabilities as they become due in the ordinary course of business, or, in shorter terms, when it cannot pay its deposits on demand in accordance with its promise."

The testimony complained of herein showed that the bank was not able "through its own agencies" to meet its liabilities and we find no error in its admission.

Since this case must be reversed and remanded for another trial because of an erroneous instruction, to which we shall refer later, we believe it is proper for us to say here that if this cause is tried again, the trial court should hold plaintiff's evidence more strictly to the issues involved. While we have found no reversible error in the admission of the testimony complained of, it was, nevertheless,

elicited in a manner which was not entirely free from prejudice to the rights of defendants. Counsel should refrain from asking questions after the court has ruled that a certain line of questioning is objectionable, and the court should hold plaintiff's evidence more strictly to the issues involved. The trial court should be guided in this respect by what our Supreme Court said in State v. Sanford, 317 Mo. 865, 297 S. W. 73, 78, wherein a bank president was prosecuted on the charge of assenting to the reception of a deposit in his bank at a time when he knew the bank was insolvent. The Sanford case was a criminal case, brought under a statute which has since been repealed, but we believe the principle announced therein is applicable to the case at bar under the statute upon which this action is based. In that case the court said:

"Certainly such officer cannot be held to the same knowledge of the exact condition which is disclosed to the liquidating officer who only comes on the scene after disaster has overtaken the bank. . . . The test fixed by the statute is knowledge of insolvency or knowledge that his bank is in failing circumstances at the time he assented to the reception of the deposit. . . . Concededly appellant was chargeable with actual knowledge of all facts and circumstances bearing on the solvency of his bank which actually existed at the time and which he reasonably should have known. He was chargeable with such knowledge of the assets of the debtors of his bank as he reasonably should have known by use of the means of knowledge then possessed by him.

"It at once appears how careful the trial court should be to admit only competent testimony tending to show the value of the assets of the bank at the time the deposit was received." [State v. Sanford, supra.]

Notwithstanding that there is a difference between a civil trial and a criminal trial in that the element of presumption of innocence and the necessity for proof beyond a reasonable doubt which are present in a criminal trial are absent from a civil trial, we, nevertheless, believe the Supreme Court's admonition should be heeded in this character of a case, whether the trial be criminal or civil.

Defendants contend that plaintiff utterly failed to make any showing of insolvency which entitled her to go to the jury, and that the court erred in not sustaining their demurrer to the evidence. In determining this question we must, of course, apply the rule long established that plaintiff's evidence must be taken as true, and plaintiff must be given the benefit of all favorable inferences arising therefrom. Having this rule in mind, we must consider the evidence in the light of its tendency to prove the insolvency of the bank on April 12, 1924, the date when the deposit was made, and the knowledge of defendants on that date of such condition of insolvency.

In White v. Poole (Mo. App.), 272 S. W. 1021, in which the directors of a bank were sued for deposits alleged to have been received at a time when they knew the bank was insolvent, the Kansas City Court of Appeals, in discussing solvency and insolvency, quoted from and cited a number of cases in this State, and also quoted from leading authorities. In that case the court said:

"Insolvency, as applied to banks, is defined as 'inability to pay its debts in the usual and ordinary course of business.' [State v. Burlingame, 146 Mo. 207, 48 S. W. 72; State v. Darrah, 152 Mo. 522, 54 S. W. 226; Mitchell v. Bradstreet Co., 116 Mo. 226, 240, 22 S. W. 358; 20 L. R. A. 138, 38 Am. St. Rep. 592.]" [White v. Poole, supra.]

Discussing solvency, the court, in the White case, supra, quoted from 14 R. C. L., pp. 628, 629, as follows:

"Solvency implies as well the present ability of the debtor to pay out of his estate all his debts, as also such condition of his property as that it may be reached and subjected by process of law, without his consent, to the payment of such debts. . . . A person may be insolvent, although he may be able to pay his debts at some future time on a settlement and winding up of his affairs."

Referring again to solvency the court, in the White case, supra, quoted from Eads v. Orcutt, 79 Mo. App. 511, 524, as follows:

"An ability to pay in the future, or an excess of assets over liabilities, without a present ability to pay debts as they become due in the usual course of business, was not solvency."

Another definition of insolvency presented in White v. Poole, supra, is quoted from 2 Morse on Banks and Banking, p. 1035, as follows:

"Insolvency is that condition of affairs in which a merchant or business man is unable to meet his obligations as they mature in the usual course of business."

The court also quoted with approval the following from 2 Morse on Banks and Banking, p. 1034:

"A bank is in failing circumstances when in a state of uncertainty whether it will be able to sustain itself, depending on favorable or unfavorable contingencies, which in the course of business may occur, and over which its officers have no control." [White v. Poole, supra.]

With these definitions of "solvency," and "insolvency" and "failing circumstances" before us, and having in mind the rule applicable in passing on a demurrer to the evidence heretofore referred to, we are of the opinion that the court committed no error in permitting the case to go to the jury. There was evidence to the effect that beginning in January, 1924, the bank, of which defendants were officers and directors, failed to make remittances to the Federal Reserve Bank in St. Louis, of amounts due from it to that bank in the same period of time within which it had formerly made such remittances. In

other words, the bank was falling behind in meeting these obligations. The Federal Reserve Bank was a clearing agent for the member banks within the Eighth Federal Reserve District, and checks drawn on the member banks were sent to the Federal Reserve Bank for collection, which bank then sent notices to the various banks in the district, notifying them of the amounts due on checks drawn against them. Under the practice then prevailing, each bank was required to remit to the Federal Reserve Bank the amount due on the day it received such notice.

Plaintiff's witness S. A. Clark testified that in January, 1924, the bank of which defendants were officers and directors, began to fall behind in making these remittances. He testified that in February, 1924, drafts drawn by the St. Francois County Bank, payable to the Federal Reserve Bank, for remittances due, were refused payment by the National Stock Yards Bank, on which they were drawn, for the reason that the St. Francois County Bank did not have sufficient funds on deposit in that bank to cover such remittances. Following this, the Federal Reserve Bank sent out tracers inquiring about remittances which were overdue, commencing on March 2, 1924, and continuing on various dates, for various amounts, until April 2, 1924. Sixteen of these tracers were sent out during the period mentioned, referring to various amounts on different dates and contained inquiries about remittances which were overdue. One of such remittances was seven days outstanding.

The St. Francois County Bank was falling behind in its remittances so frequently during the period from January to April, 1924, that the Federal Reserve Bank sent Mr. J. F. Krebs, its representative, to the St. Francois County Bank on April 3, 1924, for the purpose of collecting the items due from that bank. The evidence shows that between April 3, and April 10, 1924, the St. Francois County Bank tried to raise money to meet drafts drawn on its correspondent banks, which such banks had refused to pay because the St. Francois County Bank did not have sufficient funds on deposit to cover them. The total amount of these unpaid drafts at that time was $7,920.91.

Mr. Krebs testified that R. L. Allen, President of the St. Francois County Bank, told him that he expected to raise about $6500 through a bank, or an individual in Kansas City, to cover a part of the amount due from the St. Francois County Bank to the Federal Reserve Bank. During the period from April 3, 1924, to April 10, 1924, while Mr. Krebs, representing the Federal Reserve Bank, was in Farmington, where the St. Francois County Bank was located, two meetings were held in that city, in which the directors of the St. Francois County Bank, and some of the officers of the Farmers Bank and the Bank of Farmington, two other banks in Farmington, participated. At these meetings the St. Francois County Bank tried to obtain a loan from the

other two banks named, but the two banks refused to make such loan. As a result of these meetings, however, the two banks mentioned did finally make a loan of $10,000 to the directors of the St. Francois County Bank. This loan was evidenced by a note dated April 8, 1924, and was signed by all the directors of the St. Francois County Bank. The money thus raised by the directors on their personal obligation, was used to pay the demands of the Federal Reserve Bank. All of this evidence, showing the numerous failures of the St. Francois County Bank to meet its obligations promptly, beginning in January, 1924, and extending down to April 8, 1924, within four days of the date on which the deposit involved herein was made, was sufficient to warrant the inference that the bank was in failing circumstances, because it had failed to meet its obligations in the usual and ordinary course of business. That evidence, with the evidence of the action of all the directors in signing a note on April 8, 1924, for the purpose of raising money to pay the pressing demands of the Federal Reserve Bank, after the St. Francois County Bank itself had tried and had failed to raise money for that purpose, was amply sufficient to warrant the court in submitting the case to the jury, to let the jury determine whether or not the bank was in failing circumstances and insolvent, and whether or not the defendant directors had knowledge of such condition at the time the deposit involved herein was made.

The evidence showed that the bank was closed on May 23, 1924.

C. M. Duncan, a State bank examiner, testified that he began his examination of the bank on April 16, 1924, and completed it on April 18, 1924. This witness was asked:

"Mr. Duncan, from your examination of the bank, can you state whether or not its condition as you found it as of April 16th was substantially the same as it was four days prior, on April 12th?"

To which question he answered: "There was no material change, no, sir." He was further asked: "It was in substantially the same condition as it was on April 12th?" And answered: "Yes, sir."

The official report of State bank examiner Duncan showed that the capital stock of the bank was $50,000, and the surplus $25,000. The bank's total resources, according to the report, were the same amount, including its liability on account of its capital stock and surplus. In the list of the bank's assets there were personal and collateral loans and discounts amounting to $211,644.26. The loans on real estates were listed at $54,029.14. Among the bank's liabilities were demand deposits amounting to $89,457.37; time deposits amounting to $118,-901.64, and bills payable amounting to $45,000.

There was evidence showing that on April 12th, the date on which the deposit involved herein was made, the bank had a number of notes amounting to $64,076.53, which were the notes of a number of persons who were designated in the evidence as the "Kansas City crowd."

There was evidence tending to show that these notes were practically worthless. We think it is unnecessary to encumber this opinion with any further details with respect to the financial condition of the bank as we are satisfied that the evidence was ample to justify the court in submitting the case to the jury for its verdict.

Defendants contend that the court committed error in giving and reading to the jury plaintiff's instruction No. 2. The instruction is as follows:

"The court instructs the jury that if you find and believe from the evidence that money belonging to the plaintiff was received and taken on deposit in the St. Francois County Bank on the 12th day of April, 1924, and that said bank at said time was in fact in failing circumstances, and that the defendants were directors of said bank at said time, then you are instructed that the fact that said bank was in failing circumstances at the time of the reception of the deposit, if you so find, was and is prima facie evidence that the defendants had knowledge that said bank was in failing circumstances at such time; and you are further instructed that prima facie evidence is such that raises such a degree of probability in its favor that it must prevail unless it is rebutted or the contrary proved."

We are of the opinion that the court committed reversible error in giving this instruction. The criminal cases cited by respondent to support her contention that the instruction was proper are not applicable in view of what our Supreme Court said in the recent case of State ex rel. Arndt v. Cox (Mo.), 38 S. W. (2d) 1079, involving the identical statute upon which the instruction complained of herein was based.

The language of section 5382, Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 5382, p. 7602), with which we are concerned in this case, is as follows:

"And the fact that such bank was so insolvent or in failing circumstances at the time of the reception of the deposit charged to have been so received, or the creation of the debt charged to have been so created, shall be prima facie evidence of such knowledge and assent to such deposit . . . on the part of such officer, agent or manager so charged therewith."

Referring to the above statute, the Supreme Court, in the Arndt case, said that the relator therein had correctly stated the law as follows:

"If we understand the law correctly, we think that the presumption provided for in this statute has the same effect, and is treated by the court in the same manner, as other presumptions in civil cases, i e., when plaintiffs comply with the statute by proving that the bank is in a failing condition at the time the deposits were made, then a prima facie case is made for the plaintiff, and that with nothing

further the plaintiff would be entitled to a directed verdict. It then devolves upon the defendant to show that he did not have actual knowledge or that he did not assent to the reception of the deposits. When he has done either, *the presumption provided for by the statute is destroyed as a presumption*, and it then devolves upon the plaintiff to come forward with additional proof of the actual knowledge on the part of the officer as to these facts. If he does not do so, and with nothing further, the defendant would be entitled to a directed verdict.'' (Italics ours.) [State ex rel. Arndt v. Cox (Mo.), 38 S. W. (2d) 1079, 1084.]

In the case at bar the defendants E. J. Harrington and E. E. Swink, two of the directors of the bank, testified that they had no knowledge that the bank was insolvent or in failing circumstances on April 12, 1924, the date on which the deposit involved herein was made in the bank, but that on the contrary they believed the bank to be solvent at that time. It does not matter how little weight may have been given to the testimony of these two directors, it was a question for the jury to determine, on all the evidence, whether or not the defendants had knowledge that the bank was insolvent, or in failing circumstances on the date the deposit was made. In view of the denial of such knowledge by defendants Harrington and Swink, we believe it was error for the court to give an instruction which told the jury that if they found that the bank was in failing circumstances at the time of the deposit, such fact so found was prima facie evidence that defendants had knowledge that the bank was in failing circumstances at that time, without going farther and telling the jury that the burden still remained on plaintiff to prove by a preponderance of the evidence that the defendants did have such knowledge at the time of such deposit. The instruction, as given, in the face of such denials of knowledge, might have had the effect of leading the jury to believe that they should disregard the defendants' denial of knowledge that the bank was in failing circumstances. [See also Downs v. Horton, 287 Mo. 414, 230 S. W. 103; Alexander v. Llewellyn (Mo. App.), 70 S. W. (2d) 115; State v. Peer (Mo.), 39 S. W. (2d) 528.]

For the giving of instruction No. 2, the judgment as to the three appellants named herein, must be reversed and the cause remanded for a new trial. It is so ordered.

*Becker, J.*, concurs; *Hostetter, P. J.*, absent.