Milas J. Rue, Respondent, v. Eagle-Picher Lead Co., Appellant.
—70 S. W. (2d) 124.

Springfield Court of Appeals.    February 20, 1934.

Rehearing  denied  April  3,  1934.

*John Campbell* and *Spencer & Spencer* for appellant.

*Thos. J. Roney* for respondent.

ALLEN, P. J.—On and for about three weeks prior to June 17, 1928, the respondent was employed by appellant, as a shoveler of dry white lead, at its plant in Jasper county, Missouri. His wage for

such services was $30 per week. While so employed be became poisoned from inhaling lead dust.

In September, 1928, respondent filed with the Compensation Commission his claim for injuries on account thereof. On June 26, 1929, the commission made a final award on his claim in the total sum of $820, from which the company appealed to· the circuit court, where the award of the commission was reversed, from which judgment of the circuit court the claimant appealed to this court, where the judg-ment of the circuit court was reversed and the original award of the commission was on May 16, 1931, by this court affirmed, and thereafter paid by the appellant herein.

On December 1, 1931, the respondent herein filed with the Missouri Workmen's Compensation Commission an application for a rehearing of his claim ''on the ground of a change in condition,'' as provided by Section 3340, Revised Statutes 1929.

Thereafter, on May 6, 1932, by a unanimous finding of the Compensation Commission, based upon a hearing of the evidence in support of said application for review, an award was made in favor of claimant, as follows:

''For permanent total disability the sum of $20 per week for 300 weeks and thereafter the sum of $7.50 per week for life, each of said payments to begin as of October 31, 1929, and to be payable and be subject to modification and review as provided in said act; subject to credit of $820 previously paid employee.''

The record in this case discloses that there was no evidence of ''mental disability'' offered at any of the hearings upon respondent's original claim. That subject was first urged at the hearing upon this petition for review. Dr. McCormack, who testified at the hearings of the original claim, did however, then say that ''lead poisoning operates in various ways upon various people and there is no standard rule;'' but did also say that claimant was improving and would continue to do so and would eventually be able to work again. That he did not think claimant had any permanent disability and that in three or four months respondent would be able to work again and would be in as good condition as before his sickness.

Dr. Cummings said on November 16, 1928, that from his examination of claimant Rue, he was between ''fair and par'' and would be all right after a little more rest and treatment.

Dr. Coombs, at the same hearing, November 16, 1928, said that ''The long accumulation of lead in the system does not evidence itself until something causes an acidosis in the system and throws the lead into solution and into the blood stream.'' .

At the hearings on the original claim, no witness testified as to any unfavorable mental condition then or prior thereto. Therefore, from the testimony of the physicians given at the hearings upon the first and original claim, it was apparent that in their opinion there was

then no existing condition of claimant from which a future, mental disability was by them expected to occur as the result of the lead poisoning in evidence.

The hearings before the Compensation Commission, upon claimant's petition for review, which are now before this court for consideration, disclosed the following facts: That in all about eight physicians testified upon the subject in controversy, with the usual result that they were not in accord as to the producing cause of respondent's then principal disability for which the Compensation Commission, on May 6, 1932, made the award as hereinbefore detailed.

The respondent (claimant) herein was by the commission ordered to be sent to some disinterested doctor, in Kansas City, for examination and that the written reports of such doctor's examination should be incorporated in the record, which was done. The appellant objected to the written reports of the physicians who made such examination, being received or considered by the commission, which objection was overruled by the commission. However, since the oral testimony of the doctors, Robert C. Davis and Edward T. Gibson, was also heard by the commission, at which examination they were cross-examined by counsel for appellant, we shall not consider their unverified written reports, but shall confine our attention to their testimony given at one of the hearings in the regular order of the hearings in this cause.

Dr. Davis said an acute lead poisoning, which was completely terminated as to any physical effect, could still result in mental conditions because of the damage to the blood vessels of the brain as the tissue does not degenerate as other tissues, but does result in damage to the blood vessels and the brain, and that it is indefinite when the mental disability would or did begin to manifest itself and that all depends on the damage done to the blood vessels and the degree of poison he consumed in his system and this varies all the way from instant death to several years. Three and one-half years would not be an unusual time and there would be no relation between the time and the severity; and that the mental disability, if any, comes on gradually. Upon this matter he further said that: "The mental deterioration is the only thing I find that I can attribute to lead poisoning some of which could be attributed to infection in the teeth but that is not probable. I believe his condition is permanent, and a total disability. He could do light physical work but nothing involving any responsibility and I believe the change in the brain will be permanent and that there is no cure for it. I attribute only the degeneration of the brain to lead poisoning, he does not have any symptoms of other causes."

The substance of the testimony of Dr. Gibson was:

"My examination eliminated every cause that might produce the

mental disorder except lead and it is my opinion that the lead was the producing cause of the nervous and mental disability,'' and

''That permanent, mental disability can result from acute or chronic cases of lead poisoning; that there are some mental changes in practically every case, but the most of the cases will clear up rather quickly and there is no proportion between the intensity of the first symptom and their duration. The mental symptoms which develop later, are not the result of the lead present at the time of development, but are due to chronic stages, which were produced by it, and which are permanent.''

In considering this case, we are confronted with the plain provisions of Section 3340, Revised Statutes 1929, ''Upon its own motion or upon the application of any party in interest on the ground of a change in condition, the commission may at any time upon a rehearing after due notice to the parties interested, review any award and on such review make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in this chapter, etc.''

Appellant's assignments of error are three:

First: That ''The commission erred in admitting incompetent, ir- relevant and improper evidence on behalf of respondent, when it accepted the unsworn statements of Dr. R. C. Davis and Dr. Edward T. Gibson as evidence in the case over the objection of appellant.''

The record on the above assignment is as follows:

On April 20, 1932, before Orin H. Shaw, a member of the Missouri Workmen's Compensation Commission, at the Board of Trade Building, in Kansas City, there were present the following:

| | |
|---|---|
| For employee | Thos. J. Roney |
| For Employer | A. E. Spencer and John Campbell |
| For Insurer | Self Insurer |

Commissioner Shaw, made the following statement at a hearing on a change of condition, at Joplin, Missouri, February 25, 1932: ''I informed attorneys for both employee and employer that I would instruct employee to appear at the Kansas City office of the Workmen's Compensation Commission, and on February 26, 1932, a letter was sent to all parties requesting that employee meet me at Kansas City at 1225 Board of Trade Building, on March 7, 1932, at one o'clock P. M., to have special examination of employee. At that time employee reported at our office and I called Dr. Robt. C. Davis and had him appear before the commission and instructed him to make a complete examination of employee, after which Dr. Davis and Dr. Gibson filed their written reports on March 10, 1932;'' and the record further shows that thereafter on said April 20, 1932, the said doctors were duly sworn and testified as witnesses in this cause, the substance of which testimony has hereinbefore been stated. It is therefore certainly presumed that the sworn testimony of the witnesses must have

been the evidence considered by the commission, and also thereafter by the circuit court. The presence of the signed but unverified statements of the two doctors, Davis and Gibson, filed in the case could be, and from the cross-examination of the doctors by counsel for appellant, was at least as far as appellant was concerned, to its advantage as a basis for more effective cross-examination, as admissions or previous statements of the particular witnesses.

The appearance of counsel for appellant at the time of the examination of the two doctors as witnesses would waive any objection to the presence of the written reports previously filed in the cause. The authorities cited by appellant not meeting that situation are not in point and are not herein enumerated.

Second: It is urged by appellant, "That the commission erred in assuming jurisdiction in the matter, when no notice had been filed as required by Revised Statutes of Missouri, 1929, Sections 3336 and 3337."

Upon that contention an examination of Section 3340 upon the authority of which the petition for rehearing is considered, we find that section provides for a rehearing at any time "after due notice to the parties interested."

It was said by this court in the case of Industrial Acceptance Corporation v. Webb, 287 S. W. 657, 1. c. 660, in defining the term due notice, that "The extent of the due notice required must of necessity, be left to the sound discretion of the trial court, said discretion of course must not be abused."

The record in this case does not disclose the particular notice given in this case. However, it does disclose that counsel for appellant appeared at the hearing of the witnesses, cross-examined them and in all things demeaned themselves as actively participating in the hearing. That such participation in the proceeding waived any question of notice, and is a waiver of notice of such hearings, and in our opinion is clarity of the Hornbrook variety.

Third: It is contended by appellant "That the respondent's application for rehearing showed on its face that the alleged change of condition had been suffered some twenty-three months, prior to the filing of the application."

With respect to that contention, it appears from the abstract of the record that the first award of the commission, of December 21, 1928, was appealed to the circuit court and by it reversed and an appeal was had from the circuit court of this court, where the award of the commission was affirmed after a motion for rehearing was overruled on May 16, 1931. [Rue v. Eagle-Picher Lead Co., 38 S. W. (2d) 287.]

Thereafter, the first award of the commission was paid (the record does not disclose the date) but on December 1, 1931, the petition in this cause was filed. Whether it was within six months, as provided

by Sections 3336 and 3337, is not disclosed, however, it is the opinion of this court that the said sections do not concern the issue herein, since Section 3340 provides that the petition for review may be filed at any time.

The petition in this case, however, removes it from any reasonable contention that the "change of condition" had definitely and conclusively appeared very long before the claim therefor was filed.

The petition filed on December 1, 1931, relating the circumstances which may be now considered as an indication of what was afterward alleged to be found as a fact, is as follows:

". . . that his physical condition has changed for the worse in that he *now* suffers intense and violent pains in his stomach, much more serious than suffered at any time since July, 1929; that for the past year your petitioner's nervous condition has changed in that he *now* experiences and suffers undue excitement of his nervous system and his condition has *now* reached that state where he is unable to sleep, is weak and is easily excited; that his condition has so changed that he is *now* unable to retain in his stomach the food he eats, and this changed condition results in weakening his physical condition and increases his state of nervousness; that his condition has so changed within the last year he is now suffering mental weakness and infirmity of mind, which he did not experience prior to July, 1929.

"That all of said changes of condition, as aforesaid, has been brought about and the direct results of the injuries sustained by your petitioner growing out of the accident of June 17, 1928, as aforesaid; that by reason of said changes in petitioner's condition his mind, physical and nervous injuries, have *now* resulted in permanent total disability from which he now has no hope of recovery."

The petition for rehearing clearly states that the change of condition had then become apparent and convinces us that the claim therefor was made practically as soon as its existence was reasonably clear to respondent. Our opinion upon the change of condition in this case relates to and is based upon the evidence relative to respondent's mental condition, since the testimony of Doctors McCormack, Cummings and Coombs, at the hearing upon which the first award was made, which was definite and conclusive that they were, at the time of the opinion that respondent had suffered no permanent injuries or any results from the injuries which he did receive that were permanent, and that he would within not more than four months be in as good condition as before, then it must be reasonably certain that if his brain trouble at the time of this hearing on review was the result of the lead poisoning, it naturally follows that his condition then was the result of such a change of condition as is contemplated by Section 3340, Revised Statutes 1929. The Compensation Commission from competent evidence, so found, therefore, under the terms of that section, and the finding of the commission upon such evidence,

it is also our opinion that he has a permanent and compensable injury as a result of the lead poisoning received as detailed by the evidence heard by the commission.

Some of the more recent cases upon the subject of a ''Change of Condition,'' are expressions fully supporting our unqualified opinion that the conclusion of the Workmen's Compensation Commission expressed in its finding in this case is amply justified by competent evidence offered in support thereof, especially directing attention to the following cases: Garant v. Shell Pet. Corp., 65 S. W. (2d) 1052; Gulick v. Fruin Conlon Const. Co., 65 S. W. (2d) 927; Hoffman v. Mo. Pac. R. Co., 63 S. W. (2d) 427; Oard v. Hope Engineering Co., 64 S. W. (2d) 707.

The change of condition, as contemplated in Section 3340, Revised Statutes 1929, was fully determined in the case of Sei v. A. Guthrie & Co., 50 S. W. (2d) 664, approved by the Supreme Court, in same case on *certiorari,* reported in 61 Mo. 950, pp. 6, 1. c. 954, in which the Supreme Court makes the following statement as to what injured employee must show to recover, under Section 3340, Revised Statutes 1929: ''He must show that since the original award something not contemplated had happened that either made his condition grow gradually or progressively worse or that has resulted in an occurrence in the nature of a relapse, so that, after making a partial recovery before the award he has since again become worse.'' The finding of the commission in this case was not contemplated by the situation or condition of the respondent, shown before the commission in the first case, therefore the Sei case, supra, is conclusive upon us in the case at bar.

The holdings in the following cases are to the same effect: Herndon v. Robertson, 59 S. W. (2d) 75; State ex rel. v. Richardson, 61 S. W. (2d) 409; State ex rel. v. Haid et al., 61 S. W. (2d) 950.

In determining whether the commission's award was justified by the evidence, on appeal the court considers only evidence more favorable, in support of such award, together with all reasonable inferences which may be drawn therefrom to support the conclusion of the commission, and disregard unfavorable testimony where it is contradicted by evidence supporting the conclusion of the commission. [Shroyer v. Mo. Live Stock Co., 61 S. W. (2d) 713; Seebers v. O'Dell, 60 S. W. (2d) 678; Herndon v. Robertson Const. Co., 59 S. W. (2d) 1. c. 78; Tassi v. Haase & Co., 56 S. W. (2d) 797; Keithley v. Woods Const. Co., 56 S. W. (2d) 1. c. 632.]

Therefore, it being our conclusion that the evidence offered in this cause, showing a change of condition in respondent subsequent to the original hearing and award, and resulting from the injuries therein contemplated, is not only competent as has been hereinbefore stated, but certainly offers a sharp conflict with the evidence to the contrary, and since it was sufficient in the opinion of the Workmen's Compen-

sation Commission, upon which to find that after the original award there was an unexpected change for the worse in the condition of respondent, it is therefore our opinion that the judgment of the circuit judge to that effect should be, and the same is affirmed. *Smith* and *Bailey, JJ.,* concur.