MARY GILLICK, JAMES PATRICK GILLICK, RAYMOND GILLICK and HARRY FRANCIS GILLICK v. FRUIN-COLNON CONSTRUCTION COMPANY and STANDARD ACCIDENT INSURANCE COMPANY, Appellants.—65 S. W. (2d) 927.

Division One, December 6, 1933.

136

*J. D. Leritz* and *Allen, Moser & Marsalek* for appellants.

*Foristel, Mudd, Blair & Habenicht* for respondents.

FRANK, P. J.—This is an appeal from a judgment of the circuit court setting aside an award made by the Workmen's Compensation Commission in favor of the employer and insurer and remanding the cause with instructions to make an award in favor of claimants. Both employer and insurer appealed.

Appellants concede that respondents offered evidence tending to show that on November 18, 1929, deceased was in the employ of Fruin-Colnon Construction Company as a bricklayer; that while in the course of his employment on a job at the Carter Carburetor Company Building in St. Louis, he stepped on a nail and sustained a puncture wound of his right foot; that said wound never completely healed, that it became infected and caused a lymphangitis, or infection, which extended up his right leg, producing an enlarged and swollen gland in his right inguinal region, and an infected mass about the size of a lemon in his abdomen; that as a result of this infection he suffered septicemia which affected the organs of his abdomen, including the appendix; that he underwent an operation for the removal of the appendix on February 24, 1930, and died on March 2, 1930; that respondents' medical witnesses testified that his death was the result of the puncture wound of the foot and the conditions produced by it.

On the other hand, appellants contend that their evidence tends to show that deceased did not suffer an injury to his foot while in the employ of the construction company; that he made no report of such an injury; that he suffered an attack of acute appendicitis on February 20, 1929, for which he underwent an operation four days later; that as a result of the inflamed and infected condition of his appendix, he suffered peritonitis and septicemia; that appellants' medical witnesses testified that said condition caused his death on March 2, 1929; that his death was not caused or contributed to by the alleged injury to his foot.

Section 44 of the Workmen's Compensation Act, which now appears as Section 3342, Revised Statutes 1929, provides that "upon appeal no additional evidence shall be heard and in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: 1. That the commission acted without or in excess of its powers. 2. That the award was procured by fraud. 3. That the facts found by the commission do not support the award. 4. That there was not sufficient competent evidence in the record to warrant the making of the award."

This case was first heard by a referee who made an award in favor of claimants. On review by the full commission, the award made by the referee was reversed. The finding and order of the full commission is as follows:

"The above parties having submitted their disagreement or claim for compensation for the above accident to the undersigned members of the Missouri Workmen's Compensation Commission, and after hearing the parties at issue, their respective witnesses and evidence, the undersigned hereby find in favor of the above employer and insurer and against the above dependents and award no compensation for above accident. On review, award dated October 27, 1930, is hereby reversed and set aside with the finding that the accident of November 18, 1929, was neither directly nor indirectly the cause of employer's death on March 2, 1930, but said death resulted from causes independent of said accident."

The findings made by the full commission were findings of the ultimate fact, and under the express provisions of Section 3342, Revised Statutes 1929, and the decisions of this court construing that statute, such findings of fact, if supported by substantial evidence, are conclusive and binding on all reviewing courts. [Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S. W. (2d) 601, 604; Doughton v. Marland Refining Co., 331 Mo. 280, 53 S. W. (2d) 236.] Respondents do

not dispute the law as we have stated it, but contend that the award made by the commission is not supported by substantial, competent evidence. This contention presents the only issue for determination.

■ ■ The evidence of the employer and insurer consisted of expert testimony of three doctors; Dr. Roberts, Dr. Vosberg and Dr. Thomas. Each of these doctors gave it as their opinion that Gillick's death was caused by acute appendicitis, peritonitis and septicemia, and that the injury to his foot did not have anything to do with the cause of his death.

We will first take the evidence of Dr. Roberts. A hypothetical question propounded to him concluded by calling for his opinion as to the cause of Gillick's death. His answer, over claimants' objection was that death was due to acute appendicitis, peritonitis and septicemia. Respondents contend that the question was improper, and the answer thereto does not amount to substantial evidence, because the question omitted important facts shown by the evidence which claimants contend tended to show the true cause of the death, to-wit, the *nail puncture* of the foot, the *red streak* running from the foot to the knee, the *indurated mass* containing a quart of pus and the lymphangitis.

It may be conceded that a hypothetical question which omits important elements of the case is improper. However, we do not agree with respondents that the matters which they claim were omitted from the question were, in fact, omitted. After the first hypothetical question was asked, and after it was answered by Dr. Roberts as above indicated, the referee hearing the case, asked the following question:

"Q. Doctor, while you are on that question, you heard Dr. Maizus testify as to a beef-like appearance and as to a growth on the outer side, an abscess; taking that further fact into consideration state your answer on that question. A. The answer still remains the same."

The evidence shows that Dr. P. E. Keller performed an autopsy on the body of deceased and made a written report of the result which was introduced in evidence. The record further shows that on cross-examination of Dr. Roberts, claimants' attorney, asked him the following questions:

"Q. During your examination of the appendix and the report, did you have the knowledge that there was a mass or abscess on the side, lateral side, and that the organs around the appendix were sort of a beef-like appearance? A. I gathered from the autopsy, the mass being on the opposite side from the original infection of the foot the left side instead of the right.

"Q. You did take that into consideration in forming your opinion? A. Yes, sir.

"Q. Assuming that this mass was on the same side of the body as

the infected foot, in your opinion could this lymphangitis have traveled up the right leg to this mass? A. No, sir; not in the interior abdominal wall; it is impossible.

"Q. Can you in any way account for it being there? A. Yes, sir; transference of infection from the peritoneal cavity there by way of the blood stream.

"Q. In your opinion is that the only way it could have gotten there? A. Yes, sir."

The questions and answers above set out clearly tend to show not only that Dr. Roberts took into consideration the indurated mass in the abdomen in forming his opinion as to the cause of death, but that in his opinion it was impossible for infection to travel from the foot to the indurated mass.

Dr. Roberts further testified on cross-examination:

"Q. Doctor, could an acute appendix cause a lymphangitis? A. Yes, sir, lymphangitis of the structures through which the lymph channels pass, leaving the appendix, namely, the cecum.

"Q. And that would be down into the leg, doctor? A. No, sir.

"Q. Would that be on the anterior surface of the foot? A. No, sir; that is a reverse direction.

"Q. Then would you state, doctor, if the testimony is that there was a red streak on the anterior surface of the foot, and also testimony as to a streak going up to the knee, that the lymphangitis is not the result of an acute appendix? A. It is not the result of an acute appendix. . . .

"Q. In other words, doctor, if you find this inflamed condition of the leg, indicating a lymphangitis, it would indicate to you that the lymphangitis is traveling away from the foot rather than toward the foot? A. Yes, sir.

"Q. And with reference to the appendix, it would be traveling toward the appendix rather than away from it? A. No, sir."

He further testified that infection in the foot would travel upward in the lymph stream, and that it could not reach the appendix by way of the lymph stream.

It thus appears from evidence brought out by respondents on cross-examination that in the opinion of Dr. Roberts the red streak on the leg indicating lymphangitis did not cause the appendicitis.

The record also shows that Dr. Roberts took into consideration the nail puncture of the foot in forming his opinion as to the cause of death. After the witness was asked the first hypothetical question, and after the referee incorporated the evidence as to the indurated mass into that question, the following question and answer appears in the record:

"Q. Having in mind, doctor, the question I have asked you, and

the autopsy report, and the fact that the blood culture was negative on February 18, 1929, the patient had stepped on a nail which required attention from a nurse from ten to twelve days, which did not disable him from his work but caused him to complain of some pain at various times and which did not require any medical attention until February 21, 1930, what would your answer be then? A. I see no relationship between the acute appendicitis and the original wound in November.''

Our conclusion is that the evidence to which we have called attention clearly shows that the elements which respondents claim were omitted from the first hypothetical question propounded to Dr. Roberts, were later incorporated in the question and were taken into consideration by Dr. Roberts in forming his opinion as to the cause of death.

■ Further claim is made that Dr. Roberts freely admitted that he was unable to give a definite answer as to the cause of the septicemia which Drs. McNamee and Maizus, claimants' witnesses, assigned as the cause of death.

This contention is based on the following testimony of Dr. Roberts:

''Q. Could the septicemia which is indicated by the postmortem report, as you say, could that reach the body from an infection of the foot? A. Yes, sir.

''Q. And, of course, not having examined the body itself, you can't tell how it got there. A. No, sir.''

Before giving this testimony, Dr. Roberts had expressed a definite opinion that the septicemia shown by the autopsy report was not caused by the infected foot. His evidence that this septicemia *could have been caused* by *an* infected foot, does not destroy his opinion as an expert that it did not do so in this case. It is easy to understand how the doctor might know that the septicemia was not caused by the infected foot, and still not know what did cause it.

■ Further contention is made that Dr. Roberts expressly admitted that he could not definitely say what caused the man's death. This contention is based on the following evidence:

''Q. Could you say definitely from your examination of the appendix and the examination of the postmortem report, what caused his death? A. I would almost be willing to go on the stand and say it was acute appendicitis from the autopsy report, if that report is correct.

''Q. You say you would almost take the stand and swear, but not quite, is that what you mean? A. Yes, sir.

''Q. In other words, you are not absolutely sure? A. I couldn't state positively, no.''

In this connection it may be stated that Dr. Maizus, claimants'

witness, testified that the autopsy report was correct except as to the size of the indurated mass in the abdomen. His claim was that the mass was larger than the report showed it to be.

In our judgment respondents put the wrong construction on this evidence. The witness had theretofore expressed a definite opinion that acute appendicitis was the cause of death, and that there was no connection between the appendicitis and the infected foot. A reasonable and legitimate inference to be drawn from the evidence under consideration is, that when the witness said he would almost be willing to swear that acute appendicitis caused the death, he meant that he was almost willing to swear to it as an actual fact instead of as an opinion. If this inference is a reasonable and legitimate one, then no court can say, as a matter of law, that the evidence in question destroyed the opinion theretofore given by the witness, or rendered it unsubstantial.

Attention is also called to the following evidence of Dr. Roberts: "Q. Now, doctor, the lymphangitis, could that in any way cause or aggravate an acute appendicitis? A. Its very hypothetical. Yes, it is almost improbable, but it could, it can happen."

Evidence that it is possible but not probable that lymphangitis could cause or aggravate acute appendicitis has no probative force in view of the positive opinion of the witness that it did not do so in this case.

Contention is also made that the testimony of Dr. Vosberg does not amount to substantial evidence.

A hypothetical question was propounded to Dr. Vosberg which called for his opinion as to the cause of death. He answered, over claimants' objection, that death was the result of acute appendicitis and peritonitis.

Contention is made that the question did not mention the red streak running from the foot wound up the leg. Immediately following the first hypothetical question, the witness was asked: "Bearing this question in mind, doctor, and assuming further that there was observed on the foot a red line extending some distance up the side of the leg, and assuming further that there was some enlargement of the lymphatic gland, state whether the existence of that condition would change your opinion?" His answer was: "No, not as to his general pathology, but that would bring into it another feature, that lymphangitis existed." Although this witness testified that the red line up the leg indicated that lymphangitis existed, he did not testify that lymphangitis had anything to do with the death, and did not change his opinion as to the cause of death, when he was asked to assume the existence of lymphangitis. There is nothing in the tes-

timony of this witness tending to show that the lymphangitis caused the death or contributed thereto in any way.

Contention is made that the evidence of Dr. Thompson was incompetent.

In answer to a hypothetical question he stated that in his opinion the injury to the sole of the foot had nothing to do with the cause of Gillick's death. No claim is made that any material fact in evidence was omitted from the hypothetical question propounded to this witness. The contention is that it does not clearly appear from the record whether the witness based his opinion upon the facts shown by the evidence, or upon information received from other sources. This contention is based on the following record. Immediately after answering the first question propounded to him, the following occurred:

"Q. Doctor, in addition to the facts contained in the question that I have propounded to you, let us assume that there was on the inner side, the anterior side of the leg, a red streak extending up to the knee and there was a red spot on the dorsal surface of the foot, state whether or not that would change your answer? A. That would not change my answer.

"Q. Assuming all of the facts that were contained in the hypothetical question, state whether or not in your opinion the injury to the sole of the foot had anything to do with cause of Gillick's death? A. From the knowledge that I have obtained here and reading this history?

"Q. No, from the question that I have propounded to you. A. Will you please repeat the question?

"Q. I have in mind the hypothetical question I gave before. A. Don't repeat the whole question.

"Q. Assuming there were red streaks on the leg and a red spot on the dorsal surface of the foot, state whether or not that would change your answer. A. No, that would not change my answer."

The contention is that the witness stated that he formed his opinion "from the knowledge that I have obtained from listening here and reading that history." The record does not support the contention. As soon as the witness made the statement, counsel directed him to base his opinion on the question that had been propounded to him. The request of the witness that the question be repeated shows, without doubt, that his answer was based on the facts assumed in the question.

This further question and answer appears in the record:

"Q. Doctor, all your answers are based on hypothetical questions, you at no time examined the corpse? A. I have had no information except what I have received here today and from listening."

The same contention is made as to this answer of the witness. The only reasonable interpretation to be placed on this answer is that the witness had no knowledge of the facts of the case prior to the trial. Such is the purport of both the question and the answer.

We dislike to lengthen an opinion by reproduction of questions and answers of the witnesses, but it is difficult to give the reader a picture of this case without doing so.

Our conclusion is that the hypothetical questions propounded to employer's medical witnesses included all material facts in evidence, and the answers of the witnesses thereto amounted to substantial evidence tending to show that the injury which Gillick received on November 18, 1929, did not directly or indirectly cause his death which occurred on March 2, 1930. The commission so found and made an award in favor of the employer and insurer. That finding being supported by competent, substantial evidence, it is conclusive and binding on the courts. [Sec. 3342, R. S. 1929.]

For the reasons stated, the judgment of the circuit court setting aside the award of the commission should be reversed. It is so ordered. All concur.