Irva Joanne BROOKS (Gregory), Appellant,

v.

The TRAVELERS INSURANCE COM-
PANY, Respondent.

No. KCD 26606.

Missouri Court of Appeals,
Kansas City District.

Nov. 4, 1974.

Gilbert R. Titus and Gary R. Titus, In-
dependence, for appellant.

James W. Benjamin and John C. Cozad,
Kansas City, for respondent; Rogers,
Field, Gentry, Benjamin & Robertson,
Kansas City, of counsel.

Before DIXON, C. J., and SHAN-
GLER, PRITCHARD, WASSERSTROM,
SWOFFORD, SOMERVILLE and
TURNAGE, JJ.

PRITCHARD, Judge.

This is an action by appellant to recover,
as beneficiary, on a $20,000.00 accidental
death policy issued by respondent on No-
vember 1, 1969. Robert L. Brooks was the
named insured. On January 24, 1971, he
died as a result of a self-inflicted gunshot
wound to his head. The policy contained
this exclusion: "The insurance under this
part shall not cover any loss . . . (3)
resulting from suicide or any attempt
thereat (sane) . . . " At the trial the
sole issue was whether or not Mr. Brooks

was insane at the time he took his own life, which issue was resolved by the jury against appellant in its verdict for respondent.

■ Appellant claims that the trial court erred in excluding the opinions of two lay witnesses as to the mental state of Mr. Brooks. The first witness was Patrolman David Cosner of the Independence Police Department. He stopped Mr. Brooks for running a red light on Walnut Street in Independence about December 17, 1970. He chased Mr. Brooks for about 7 blocks before he stopped. Upon being told to stay in his car, Mr. Brooks told Cosner as to why he had not stopped, "that he had no way of knowing who I was behind him, and that I might be someone who was after him. Q Did he make any statement at all about who he thought that someone might be? A He made numerous statements from the time I had him stopped in reference to Communists. He stated that they were all around, if I knew how many were in this town, I would be worried, too, about who was following me." Cosner observed a piece of wood protruding underneath the driver's seat, and he asked Mr. Brooks why he was carrying that object. "He stated words to the effect that if you had people following you that were trying to kill your little girl, you'd carry this for protection. When I asked him who these people were, he again referred to Communist sources." The piece of wood was a table or chair leg approximately two and a half to three feet long. "Q Did he make any other statements to you about anyone during the time you were talking to him, either at the scene or at headquarters? A The entire—almost the entire time I was speaking to him at the scene he was crying outwardly, tears were running down his face, and he seemed quite excited. He made reference to numerous vehicles going by and stating this was a Communist, that was a Communist. One police car went by during this time, and he stated that was probably a Communist, too; that if J. Edgar Hoover was doing his job, he wouldn't need to be carrying weapons in his car. Q

And did you book him there for carrying concealed weapons? A Yes, sir. Q Is there anything else that he said or did that caused you to think it was unusual? A Constant references to his family, and how he was worried about the well-being of his family, that there was a plot to get them. Q And was there anybody else that he thought was plotting to get him or his family, other than the Communists? A I don't remember any reference to such. He also repeatedly had to be warned about grabbing me by the lapels of the coat; when he would say these things and point, he would grab me by the lapels and he had to be warned to restrain himself." Upon cross-examination, Cosner testified as to the contents of his written report, relating to the wooden furniture leg: "Upon questioning Mr. Brooks in regard to the item, he stated, 'That's my nigger killer,' and also, 'I'll use that damn club, too.'" On redirect examination Cosner was asked: "Q Officer, based on your observation of Mr. Brooks there that night and all the conversation that you had with him and the remarks that he made to you and your physical observation of him, do you have an opinion whether or not this man was sane or insane? MR. BENJAMIN: Just a moment. Your Honor, I don't believe this witness has been qualified as an expert witness and I must object to him invading the province of the jury on the ultimate issue with a non-expert witness. THE COURT: Objection sustained." The same objection was sustained as to whether Mr. Brooks acted as a normal individual.

The second witness whose testimony as to the sanity was excluded by the court was Mr. Edmund R. Lipowicz, II, an attorney. Mr. Brooks came to see him around the first part of January, 1971, concerning representing him on two charges in the Independence Municipal Court. Mr. Lipowicz checked and found only one pending charge—that of carrying a concealed weapon. He discussed that charge with Mr. Brooks at length on perhaps three or four different occasions in his office. Mr.

Brooks explained the charge of carrying a concealed weapon that he had a club of some type in his car continuously to protect himself against Communists. "He had some fear of the fact that the Communists were infiltrating the government, that they were about to do bodily harm to both he, his wife, and his family, and he was constantly in fear of the fact that Communists would attack him simply because he felt very strongly about his country and was what I am sure a lot of people would consider a very conservative or right-wing philosopher." Mr. Lipowicz told Mr. Brooks that he should not carry a weapon of that type as it was a violation of the laws and he responded that he did not care about that, that the paramount issue was to protect himself against this Communist or possible Communist attack. Mr. Brooks was very upset about the situation and became highly excited, which was the only emotion he showed. Mr. Brooks noticed that Mr. Lipowicz had an interest in guns and weapons; he became real upset when he learned that the latter was not interested in arming himself against any possible Communist attack or infiltration. He told Mr. Lipowicz that he should above all keep in mind the fact that he should take care of himself and his family to prevent any possible attack by any Communists.

There is no necessity to rule upon the sufficiency of the foundation of the above two witnesses' testimony in order that they might be entitled to give their opinions as to Mr. Brooks' sanity. The record discloses that after the sustaining of the objections appellant made no offer of proof as to what the answers of the witnesses would be. Under the general rule and the prevailing rule in this state, absent an offer of proof, there is nothing presented for review on appeal. Thayer v. Sommer, 356 S.W.2d 72, 80[11, 12] (Mo.1962), additionally setting forth the requirement that there must be an offer of proof that the answer would have been in favor of the complaining party; Moore v. Parks, 458 S.W.2d 344, 348[5, 6] (Mo.1970); Elliott v. Richter, 496 S.W.2d 860, 864[1] (Mo. 1973). There are cases in this state which

set forth an exception to the prevailing rule. In State v. Northeast Building Company, 421 S.W.2d 297, 300[1] (Mo.1967), after stating the purpose of the requirement of offers of proof, the court said, "It follows that the reason for a formal offer of proof does not exist if the trial court and counsel by other means are sufficiently advised as to what the testimony of the witness will probably be if he is allowed to testify. Merk v. St. Louis Public Service Company, Mo., 299 S.W.2d 446, 449-450[3, 4]; Wahl v. Cunningham, 320 Mo. 57, 6 S.W.2d 576, 586-587[9], 67 A.L.R. 489. See also State ex rel. State Highway Commission v. Bruening, Mo., 326 S.W.2d 305, 310[4, 5]."

The Northeast Building Company case is distinguishable. There, it was known that the witness would testify as to *some* value of boilers and machinery which were fixtures and which could properly be valued as elements of damages of the property as a whole, and his testimony was excluded. Here, it was not known whether the witnesses would testify whether deceased was sane or insane. Controlling here is Vineyard v. Vineyard, 409 S.W.2d 712, 717[2, 3] (Mo.1966), which applied the prevailing rule as to review of a claim of erroneous exclusion of opinion testimony, as to unsoundness of mind, "since plaintiff made no offer of proof as to what her testimony in that regard would have been." In view of Vineyard, this court is precluded from further considering appellant's claimed error.

■ The second issue is whether the trial court erred in permitting expert witness, Dr. George J. Lytton, a physician and psychiatrist, to give his opinion that Mr. Brooks was sane at the time of his suicide, when the court limited the foundation for the opinion to a consideration of Mr. Brooks' suicide note. The matter came up in this manner: Dr. Lytton was first given a long hypothetical question concerning the evidence of Mr. Brooks' conduct prior to his death. Then he was asked to consider the suicide note, and gave his opinion that from examining the note Mr. Brooks had

the intent to take his own life. He was then asked his opinion as to Mr. Brooks' sanity or insanity, "based on what I have asked you to assume *and* the suicide note." (Italics added.) The objection was the question did not have a proper foundation in it and that it did not take into consideration all of the evidence. Counsel did not state wherein the foundation was lacking or what evidence was omitted. The objection was thus insufficient. Cf. Glowczwski v. Foster, 359 S.W.2d 406, 411 [6–8] (Mo. App.1962). Nevertheless, the court, apparently misunderstanding the word "and" in the question for "in", did state, "The question is limited to his opinion with reference to the note", and the doctor gave his opinion that the man was sane. This error or mistake was, however, rendered harmless because there was extensive cross-examination and re-direct examination, and further opinion of sanity from Dr. Lytton. See Gillick v. Fruin-Colnon Const. Co., 334 Mo. 135, 65 S.W.2d 927, 929 (1933); and Travelers' Ins. Co. v. Schenkel, 35 F.2d 611, 612[3] (C.A. 8th, 1929).

The judgment is affirmed.

All concur.