**STATE of Missouri, Respondent,**

v.

**Carl M. HINES, Appellant.**

**No. KCD 29769.**

Missouri Court of Appeals, Kansas City District.

June 12, 1978.

Clifford A. Cohen, Public Defender, Kevin Locke, Asst. Public Defender, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Terry Lee Lister, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Defendant appeals from his conviction by a jury of stealing over $50 and the subsequent sentence by the court of five years imprisonment under the second offender act. Defendant assigns two points on appeal: (1) insufficiency of the evidence; and (2) refusal to permit a certain question on voir dire of the jury panel. We affirm.

At 8:00 a. m. on July 12, 1976, Clarence Dunn, an employee of the Retail Store Employees' Union, saw defendant carrying a large, new electric IBM typewriter, green in color, out of the building which housed the Union offices. Dunn asked defendant where he was going with the typewriter, to which defendant made no response. He proceeded to load the typewriter into a waiting car and then sped away. Dunn proceeded upstairs to the Union offices, where he checked and found a typewriter missing. No one had authority to remove a typewriter from that office.

Hess, another Union employee, identified the missing typewriter as one of those which had been purchased by Union from IBM on May 13, 1976, at a cost of $813 each. Defendant was arrested on August 3, 1976, under another name and was identified by Dunn as the one he had seen on July 12. The typewriter, however, was never recovered.

## I.

■ Defendant challenges the sufficiency of the identification of the typewriter on both factual and legal grounds. Factually, he contends that Dunn's description of a new green IBM typewriter intended to describe the typewriter which was missing from the Union office, not the typewriter which he saw in defendant's possession. A fair reading of Dunn's testimony does not yield that interpretation. The testimony in question follows:

"Q. Now, which window of the vehicle was that typewriter placed in?
A. Opposite the driver.
Q. That would be the passenger side?
A. Yes, sir.
Q. Was that window opened?
A. Yes, sir.
Q. And were you close to him at that time?
A. About three feet from him, yes, sir.
Q. Now, what did you write down that license number on?
A. On the back of my route book.
Q. On the back of your route book?
A. Yes, sir.
Q. Was that route book inside your brief case?
A. Yes, sir.
Q. Do you know the approximate value of that typewriter?
A. Eight hundred thirty dollars.
Q. Do you know what brand typewriter it was?
A. IBM.
Q. Do you, at this time, recall what color the typewriter was?
A. Green."

It seems clear that the description given by Dunn related to "that typewriter" which he had seen defendant place inside the waiting car. If there could be any question on this score, that was a matter for jury consideration, and all inferences must now be resolved in favor of the jury verdict. *State v. Thompson,* 428 S.W.2d 742 (Mo.1968); *State v. Poole,* 563 S.W.2d 156 (Mo.App.1978); *State v. Cain,* 507 S.W.2d 437 (Mo.App. 1974).

■ Defendant further challenges the legal sufficiency of Dunn's identification under the *Thompson* and *Poole* decisions, *supra.* In *Thompson,* an identification of a stolen wallet and pair of gloves was held insufficient although the witness said that the items in evidence were "exactly like" those missing. In holding that circumstantial evidence insufficient, the court carefully pointed out that "there is no evidence that he [the defendant] was at the Burgess home or anywhere near it during the hours in which this burglary was committed, or at any other time, or that he was in Sikeston on that date." So also in *Poole,* the defendant had not been seen near the scene of the theft. By way of contrast, defendant in the present case was seen by Dunn leaving the building where the theft occurred, carrying a typewriter meeting the description of the one which was stolen. This difference brings the present case within *State v. Sloan,* 548 S.W.2d 633, 639 (Mo.App.1977), which distinguishes *Thompson* on this very basis.

## II.

■ Defendant's second point relates to his effort to ask the jury panel with respect to their ability to distinguish between the burden of proof in a criminal case as compared to the standard applicable in a civil case. The portion of the examination in question was as follows:

"Has anyone here ever served on a civil jury before? If you have please raise your hand.

I see three hands. My question is directed to you three. Do you understand, having served on a civil jury before, that the burden of proof—

THE COURT: Well, I don't think we need to get into law in civil cases.

MR. LENTZ: Your Honor, I propose to ask—I want to lay a foundation for my question by explaining what the burden is in a civil case, ask them if they have the ability to apply a different standard in this case.

THE COURT: Okay. Your offer is denied. Proceed."

The refusal to permit the attempted interrogation was not error. The matter with respect to which defense counsel sought to inquire was a matter for instruction by the court, not questions by counsel on voir dire. *State v. Ford,* 346 Mo. 882, 143 S.W.2d 289, 291 (1940); *State v. Henderson,* 547 S.W.2d 141, 143 (Mo.App.1977).

In the *Ford* case, defense counsel attempted to ask on voir dire if the panel could distinguish between assault and robbery. The court held that attempted interrogation was properly refused: "Counsel may not implant in the jury's minds the idea that they should independently draw legal distinctions. They must be guided by the court's instructions on such questions."

It should be noted that the trial court had already instructed the jury panel on presumption of innocence and the necessity of the State proving its case beyond a reasonable doubt, and at the conclusion of the evidence the court again instructed the jury on those matters. Indeed, just before the disputed attempt at interrogation herein above quoted, defense counsel himself had called attention to these legal points in the following manner:

"Now, one of the propositions involved in a criminal case is that a person accused of a crime is presumed innocent unless and until he is found guilty by a jury. So, Mr. Hines, as he sits here is innocent. Does anyone disagree with that proposition of law?

Another proposition in a criminal case is that the State has the burden of proving anyone accused of a crime guilty by evidence beyond a reasonable doubt. Does anyone disagree with that proposi-

tion of law? Does anyone think that the State has too heavy of a burden to overcome in proving someone guilty?

What this boils down to is that the State has to prove everything, and this man may sit here and doesn't have to prove anything. That's another proposition in a criminal case. Does anyone disagree with that?"

Under all of the circumstances, a refusal to allow the additional interrogation in question caused no prejudice to defendant. There was no more prejudice here than there was in *State v. Jenkins,* 494 S.W.2d 14, 18 (Mo.1973) where the Supreme Court held that it was non-prejudicial to refuse to allow the defense counsel to probe the understanding of the jury panel as to the difference between the duties of a civil jury as compared to a criminal jury. At the very least, the refusal to permit this interrogation was well within the wide discretionary limits of the trial court. *State v. Mudgett,* 531 S.W.2d 275, 279 (Mo. banc 1976).

Affirmed.

All concur.