**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Leslie Wayne DETHEROW,
Defendant-Appellant.**

No. 12564.

Missouri Court of Appeals,
Southern District,
Division Two.

March 7, 1983.

David R. Fielder, Fielder, Jones, Conklin & Skinner, Springfield, for defendant-appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Presiding Judge.

The defendant was charged with sexual assault in the first degree, § 566.040, in that he had sexual intercourse with a person to whom he was not married and who was 14 years old. A jury found he was guilty. In response to the verdict, he was sentenced to imprisonment for three years. He presents two points on appeal.

The victim was the younger 14-year-old sister of the defendant's wife. At the time of the incident, the defendant and his wife were in the process of the dissolution of their marriage, possibly separated. The defendant was said to be violent, especially when drinking. On the evening in question, the victim was babysitting for her sister. When the sister left about 9:30 p.m., the victim was in a normal condition.

The defendant, after an evening of drinking, entered the house at approximately 1:00 a.m. He went into the bedroom and returned, clad only in his undershorts, to the living room where the victim was sitting. By fondling her, he made advances to the victim, but she resisted by pushing him away with her feet. He made another trip or two between the bedroom and the living room and finally appeared unclothed. He grabbed the victim and told her unless she cooperated, he would knock her out. After the victim made a trip to the bathroom, he pulled her into the bedroom, where he was having sexual intercourse with her when his wife came home. After a short interval, the victim and her sister went to a neighbor's house. The defendant left in the car that he had been driving, which belonged to a friend. The victim was interviewed at the neighbor's house by a police officer. She then went to a hospital where she was examined.

The defendant testified that when he arrived home he found his wife gone. The victim was sitting in a chair in the living room. He acknowledged her presence, went into the bedroom, undressed down to his underwear and fell asleep on the bed. He was soon awakened and found his wife and her sister "standing at the bedroom door and they were talking about me supposedly had raped my sister-in-law." In leaving he removed the coil wire from the car his wife had been driving and left it by the telephone in the house. He said he was going to take his car and leave the friend's car. However, his car wouldn't start and he took the coil wire in the house to examine it.

The neighbors corroborated the testimony of the victim in that they described her appearance as "in shock," "dazed" and "shaking." The examining physician found the hymen was torn and bleeding, there was a hematoma in the tissues of the hymen and blood on the genitalia. The injuries looked fresh and recent, from an hour to perhaps six hours before the examination at approximately 4:00 a.m. During the testimony and in final argument, the defendant emphasized inconsistencies between the victim's testimony and statements made to the investigating officer, to the examining physician and to a detective and between the statements themselves. These statements were in evidence. They do vary from the testimony and from each other in some respects. However, in other respects they are remarkably consistent. The defendant does not assert the insufficiency of the evidence.

■ The defendant's first point is based upon the failure of the trial court to grant his motion for a mistrial. The defendant called a serologist-criminalist of the Regional Crime Laboratory. He established that the tests performed by this witness would not link the defendant to the victim. The witness said he had no samples (primarily

hair samples) from the defendant. In response to cross-examination the witness replied that the defendant had not submitted any samples. The motion followed.

At the trial and before this court, the defendant contends a mistrial was required because the question and answer constituted an impermissible comment on his constitutionally protected right not to testify. It is generally held that there is no "violation of this principle unless there can be said to be a *direct* and *certain* reference to the failure of the accused to testify." *State v. Reynolds,* 536 S.W.2d 493, 497 (Mo.App. 1976). This court does not view the question and answer concerning the production of hair samples to be such a reference. Upon motion by the state under Rule 25.06, the court may compel the production of hair samples. No such motion was made. Nevertheless, even though the defendant was not required to volunteer those samples, this court is not prepared to hold that a defendant can call an expert witness to establish such a lack of connection and then object to the state showing the defendant did not submit hair samples. Compare *State v. Bellew,* 586 S.W.2d 461 (Mo.App. 1979). But, this proposition need not be further considered. The trial court deemed the question and answer to be irrelevant and clearly instructed the jury to disregard it and struck the same from the record. "The trial court observed the incident and was in a better position than this court to evaluate the prejudicial effect, if any, ... and the possibility of its removal by some action short of a new trial, which is a most drastic remedy and should be resorted to only when the incident is so grievous that the prejudicial effects can be removed no other way." *State v. Brooks,* 567 S.W.2d 348, 353 (Mo.App.1978). Even if the question and answer could be construed to be an impermissible oblique reference to the constitutional privilege, the action of the trial court was sufficient. *State v. Rothaus,* 530 S.W.2d 235 (Mo. banc 1975).

■ The defendant's remaining point is that the trial court erred in not declaring a mistrial when the assistant prosecuting attorney asked the victim to point out on a diagram where the "rape" took place.

Upon the defendant's objection, the trial court offered to instruct the jury "very strongly" to disregard that remark. The defendant declined that offer and insisted upon a mistrial. A substantially similar incident occurred soon thereafter during the direct examination of the victim. Again, the defendant's sole request was for a mistrial.

The defendant contends the word "rape" carries with it the use of force, a more serious crime, and that therefore he was prejudiced. He cites cases such as *State v. White,* 621 S.W.2d 287 (Mo.1981); *State v. Wright,* 582 S.W.2d 275 (Mo.1979). The term rape was used only in reference to the incident in question. Obviously those cases dealing with improper references to other crimes are not applicable.

The defendant cites no case holding that such use of the term rape was prejudicial to his position. Under the circumstances of the case, this court finds it was not. Accepting the connotation of the term asserted by the defendant, the state injected into the case an element unnecessary to establish the guilt of the defendant, the use of force. By his extensive and penetrating cross-examination of the victim, the defendant effectively raised several points concerning the force used and her failure to flee.

Further, even on the basis that the use of the word was erroneous, a mistrial was required only if that use resulted in "noncurable error." *State v. Jefferson,* 426 S.W.2d 41 (Mo.1968). By no stretch of imagination may it be said the use of the term constituted a statement or evidence so highly prejudicial to the defendant that the error could not have been cured by striking and instructing the jury to disregard the same. *State v. Nolan,* 423 S.W.2d 815 (Mo. 1968). The trial court certainly did not abuse its discretion in not declaring a mistrial. *State v. Hayes,* 442 S.W.2d 14 (Mo. 1969).

■ The foregoing demonstrates the defendant's second point as stated has no merit. But, in argument thereunder he seems to assert the trial court erred in not instructing the jury to disregard the term.

The trial court on its own motion could have properly done so. *State v. Cox*, 590 S.W.2d 378 (Mo.App.1979). However, in the circumstances of this case the defendant, who in the trial court sought a mistrial or nothing, cannot on appeal convict the trial court of error in failing to instruct the jury to disregard a curable remark. *State v. Johnson*, 483 S.W.2d 65 (Mo.1972); *State v. Jefferson*, supra; *State v. Nash*, 621 S.W.2d 319 (Mo.App.1981); *State v. Cox*, supra.

It must be noted that after the prosecutor's use of the term, it was subsequently used by witnesses. Upon the third use of the term, after an unsuccessful motion for a mistrial, the defendant belatedly asked that the jury be instructed to disregard that reference. Other than by argument, the defendant has made no point of the refusal of that request. It too would be without merit. After permitting that term to remain before the jury on two occasions and following his cross-examination, the defendant could not demonstrate the cumulative use of the term is reversible error. *State v. Engberg*, 376 S.W.2d 150 (Mo.1964); *State v. Sykes*, 611 S.W.2d 278 (Mo.App.1980). The judgment is affirmed.

HOGAN and PREWITT, JJ., concur.