**Paul T. BENDER, Plaintiff-Respondent,**

v.

**BURLINGTON–NORTHERN RAILROAD COMPANY, a Corporation, Defendant-Appellant.**

No. 12608.

Missouri Court of Appeals,
Southern District,
Division Two.

May 16, 1983.

Motion for Rehearing or to Transfer Denied June 27, 1983.

Application to Transfer Denied Aug. 16, 1983.

Eric A. Cunningham, Jr., St. Louis, C. Wallace Walter, Bruce E. Hunt, Mann, Walter, Burkart, Weathers & Walter, Springfield, for defendant-appellant.

Thomas Strong, John Wooddell, Strong & Placzek, P.C., Springfield, for plaintiff-respondent.

MAUS, Presiding Judge.

On September 6, 1978, in the course of his employment by the defendant railroad, the plaintiff was using an air powered hammerdrill to drill holes in concrete bridge piers. After completing that work on one pier, the plaintiff placed the hammerdrill on the deck of the bridge above him, preparatory to moving to a different pier. The air hose came loose from the hammerdrill and struck the plaintiff in his right eye. He suffered a severe injury to that eye. Under an appropriate instruction, a verdict for the plaintiff was authorized upon a finding that the defendant failed to provide reasonably safe appliances. See MAI 24.01. The jury returned a verdict for the plaintiff in the amount of $750,000.

Upon appeal, the defendant makes no contention based upon the nature of the appliances provided or the manner in which the injury occurred. A more detailed statement of the facts of the occurrence is not required. In addition to the issue of excessiveness, the defendant presents eight points of alleged trial error which will be first considered.

The first point is that the trial court erred in sustaining the plaintiff's motion in limine to exclude reference to other reportable injuries to the plaintiff, consisting of a mashed toe, a cut lip and an insect bite. The body of the motion stated it was based upon *Senter v. Ferguson*, 486 S.W.2d 644 (Mo.App.1972). In that case the defendant's cross-examination of the plaintiff concerning irrelevant prior injuries and health conditions was held to be reversible error.

Upon cross-examination, the defendant had the plaintiff's fellow employee read the defendant's General Safety Rules 650 and 651. These rules emphasized the duty of the defendant's employees to place safety ahead of other considerations. On redirect, the fellow employee was asked how the plaintiff observed the safety rules in comparison with his fellow employees. Without objection, the witness replied that the plaintiff, like everyone else, tried to take as much care as he could. The defendant also cites other references, made without objection, to the plaintiff's compliance with safety rules. The defendant now complains the sustained motion in limine erroneously deprived it of the right to cross-examine the plaintiff concerning the prior accidents to refute the plaintiff's safety consciousness. One response of the plaintiff to this argument is that error has not been preserved because the defendant made no offer of proof.

■ There is a dearth of authority in this state concerning the appropriateness, scope and effect of orders sustaining motions in limine. Annot., Motions to Exclude Prejudicial Evidence, 63 A.L.R.3d 311 (1975). It has been suggested that such an order should be constructed to bar the forbidden subject during the trial unless its propriety or admissibility is established outside the hearing of the jury. 63 A.L.R.3d 311, supra at p. 327–28. The courts of this state have not determined if a party subject to such an order must make an offer of proof as a foundation for complaint upon appeal. Compare *Gaston v. Hunter*, 121 Ariz. 33, 588 P.2d 326 (1978); *State v. Church of Nazarene of Logansport*, 268 Ind. 523, 377 N.E.2d 607 (1978); *Norman v. State*, 523 S.W.2d 669 (Tex.Cr.App.1975). It is established in this state that with certain exceptions, a party may not complain of the exclusion of evidence when he has made no offer of proof. *Elliott v. Richter*, 496 S.W.2d 860 (Mo.1973); *Brooks v. Travelers Insurance Company*, 515 S.W.2d 821 (Mo. App.1974). This is not true when it is obvious an offer of proof would have been futile. *Miller v. KAMO Electric Cooperative, Inc.*, 351 S.W.2d 38 (Mo.App.1962).

■ The plaintiff's motion was tendered and sustained upon the basis that evidence of the plaintiff's prior physical injuries would be immaterial to the injury to his eye. Generally, evidence of prior accidents of the plaintiff, even though demonstrating negligence on his part, would be inadmissible upon the issue of his contributory negligence in this case. *McComb v. Vaughn*, 358 Mo. 951, 218 S.W.2d 548 (1949). Also see *Brownridge v. Leslie*, 450 S.W.2d 214 (Mo.1970); *Wehrkamp v. Watkins Motor Lines, Inc.*, 436 S.W.2d 698 (Mo.1969). For the purpose of this point it may be assumed the defendant's injection of the safety rules and the plaintiff's response thereto made his prior acts of negligence admissible. However, that basis for admissibility was not before the trial court when the motion was granted. At no time was there an offer of proof to demonstrate the prior accidents would in fact refute the plaintiff's safety consciousness. The trial court did not exclude evidence of the prior accidents when that evidence was relevant. In such a context, the defendant was required to make an offer demonstrating the relevancy of the evidence it contends was erroneously excluded. *Sampson v. Missouri Pacific R. Co.*, 560 S.W.2d 573 (Mo.banc

1978); *Compton v. Williams Bros. Pipeline Company,* 499 S.W.2d 795 (Mo.1973).

The defendant's next two points arise from the voir dire of the jury panel by the plaintiff. These points must be reviewed under well established rules. "The purpose of the examination by defendant of the panel on their voir dire is to develop, not only facts which might form the basis of a challenge for cause, but also such facts as might be useful to him in intelligently determining his peremptory challenges." *State v. Granberry,* 484 S.W.2d 295, 299 (Mo.banc 1972). "Great liberality is allowed in inquiring into attitudes and experiences of the jury panel." *State v. Coleman,* 553 S.W.2d 885, 887 (Mo.App.1977). "[W]e recognize the broad discretion vested in the trial court for determining the propriety of questions during voir dire. Absent an abuse thereof, we should not interfere." *State v. Garrett,* 627 S.W.2d 635, 642 (Mo. banc 1982).

After a member of the panel responded that he had been a juror in a criminal case, plaintiff's counsel made a comment that included a statement, "[t]he state has to prove something beyond a reasonable doubt, sometimes to a moral certainty." The defendant immediately moved for a mistrial. Following a bench conference, plaintiff's counsel was permitted to ask the panel if any preconceived idea would prevent them from following a law, which might be given to the jury at the conclusion of the trial, that says the plaintiff's burden is something different than proving the defendant's liability beyond a reasonable doubt.

In contending the trial court erred in not sustaining the motion for mistrial, the defendant relies upon *State v. Hines,* 567 S.W.2d 740 (Mo.App.1978). In that case the defendant's counsel was permitted to inquire if any panelist disagreed with the proposition that the state had the burden to prove guilt beyond a reasonable doubt. Thereafter, the trial court refused to permit the defendant to explain to the panel the burden of proof in a civil case and ask if the panel had the ability to apply a different

standard in the criminal case. The appellate court first noted the explanation of the burden of proof is a matter of instruction for the court. It concluded the refusal did not prejudice the defendant and was not an abuse of the trial court's discretion. *State v. Hines,* supra. This court does not construe that case as an affirmative condemnation of the action of the trial court in this case. Permitting a limited inquiry concerning the difference between the burden of proof in civil and criminal cases has been approved. *State v. Cummings,* 607 S.W.2d 685 (Mo.1980).

■ The plaintiff did not attempt to improperly instruct the jury by defining the term of reasonable doubt. *State v. Beatty,* 617 S.W.2d 87 (Mo.App.1981); *State v. Hurst,* 612 S.W.2d 846 (Mo.App.1981). Nor did he seek an impermissible commitment to a course of action by the panel. *State v. Thompson,* 610 S.W.2d 629 (Mo.1981); *Wright v. Chicago, Burlington & Quincy Railroad Co.,* 392 S.W.2d 401 (Mo.1965). It has been said, "[t]he correct procedure is for counsel to ask the members of the panel whether, if the court later instructs them in a specified manner, they have any opinion or conscientious scruples such as would prevent them from returning a verdict accordingly." *Duensing v. Huscher,* 431 S.W.2d 169, 172 (Mo.1968). Also see *Bruemmer v. Becker,* 492 S.W.2d 781 (Mo.1973). The limited inquiry permitted in this case was not an abuse of discretion. *State v. Cummings,* supra.

■ Plaintiff's counsel also inquired of the panel if anyone had relatives or close friends blind in one or both eyes or who had suffered an injury that rendered them blind or nearly blind. The defendant's ensuing motion for a mistrial was denied. The defendant contends this was reversible error because the inquiry injected the subject of blindness into the case. The defendant further argues the inquiry improperly inferred the plaintiff was blind. It is unquestioned that the plaintiff did suffer a serious impairment in his right eye. The inquiry does not mention the extent of the plaintiff's impairment. A panelist's relationship with

one who was blind or nearly blind could have created a preconceived attitude affecting the evaluation of the plaintiff's injury. Such a relationship would certainly be useful to a party in determining peremptory challenges. Permitting the question was not an abuse of discretion. *State v. Coleman,* supra.

■ The defendant's next point is based upon plaintiff's counsel's remark in his opening statement that plaintiff was a danger to himself and to his co-workers. The defendant requested a mistrial because there would be no evidence to sustain that statement and it was argumentative. The defendant argues that reversible error is established because plaintiff's counsel knew there was no evidence to support that statement, citing *Cade v. Atchison, T. & S.F. Ry. Co.,* 364 Mo. 620, 265 S.W.2d 366 (Mo.banc 1954).

As evidence to support his statement, the plaintiff cites the following. There is a serious impairment of vision in the plaintiff's right eye. On the job, the plaintiff squints a lot and keeps that eye shut most of the time. He takes his time and is more cautious. When working where he might bump into another employee, he turns to the right. When swinging a maul, the plaintiff did not squarely hit the "B and O" at which he was swinging. He vibrated the hands of the workmen holding the B and O. He broke three or four maul handles and was told to do something else. On one occasion he tripped and fell, hurting his hip. His eye is bothered by dust and pollen. When possible, he is assigned work on the ground. This evidence refutes the defendant's argument of bad faith. *Cade,* relied upon by the defendant, is not applicable.

■ The trial court did correctly determine that this remark was argumentative. But, it denied the request for a mistrial. In response to an inquiry, the defendant told the court it would not request the jury to be admonished to disregard the remark. Whether or not that remark required a mistrial was within the discretion of the trial court. *Vaeth v. Gegg,* 486 S.W.2d 625 (Mo.1972). The trial court did not abuse its

discretion by deciding such a drastic remedy was not required. *Hoene v. Associated Dry Goods Corporation,* 487 S.W.2d 479 (Mo. 1972). The defendant did not create reversible error by declining to request such an admonition. *State v. Detherow,* 648 S.W.2d 219 (Mo.App.1983).

■ The defendant's next point arises from a question pertaining to promotions. Through a prior witness, the plaintiff made an offer of proof that the witness overheard plaintiff's foreman tell a supervisor that the plaintiff could not see well enough to run a crane. Further, it was this reason the plaintiff did not make an application for that job which was filled by a fellow employee. The offer was rejected upon the basis that the statement by the foreman did not bind the defendant. On his direct examination, the plaintiff was asked, "Do you believe that you have been passed over for any promotions—?" The question was interrupted by an objection that it was without foundation and was so prejudicial a mistrial was required. The objection was sustained and the jury instructed to disregard the question. The request for a mistrial was denied.

The defendant argues this was reversible error. This argument is primarily based upon the assertion "the court had previously refused inquiry into this issue." Therefore, the defendant contends plaintiff's counsel put the question in bad faith. The defendant cites authority to the effect that "[c]ounsel should refrain from asking questions after the court has ruled that a certain line of questioning is objectionable ...." *Graf v. Allen,* 230 Mo.App. 721, 731, 74 S.W.2d 61, 65 (1934). *Cade* is cited as authority for a mistrial when a question is asked in bad faith.

The question under consideration was premature and, if completed, perhaps would have called for an inadmissible opinion. However, the trial court had not ruled that the fact the plaintiff had not been promoted in three years was a forbidden issue or line of questioning. It could not have properly so ruled. It is possible the plaintiff

could have developed a factual basis to support a permissible inference he was not promoted because of his visual impairment. The broad scope of the defendant's objection and the fact that objection was sustained without comment may have discouraged plaintiff's counsel from pursuing the inquiry. In all events, the evidence does not establish plaintiff's counsel asked a question on a forbidden issue in bad faith.

It is obvious the trial court was in a position superior to that of this court in measuring the impact of that question upon the four-day trial. The trial court determined the mere asking of that question did not require the termination of the trial. This court cannot say that determination was an abuse of discretion. *Furlow v. Laclede Cab Company*, 502 S.W.2d 373 (Mo.App.1973).

At the end of his opening statement, plaintiff's counsel first informed the jury of the plaintiff's life expectancy, measured by years and then measured by days. Counsel then stated a belief the plaintiff suffered damage in excess of $1 million, as an obvious prelude to stating the plaintiff's prayer was for a verdict in that amount. The defendant contends the trial court's refusal to declare a mistrial because of this statement is reversible error. The statement was not, as the defendant argues, a per diem argument which demands a mistrial. *Graeff v. Baptist Temple of Springfield*, 576 S.W.2d 291 (Mo.banc 1978). The decisions of the Supreme Court of this state establish the same is true of counsel's reference to the prayer of the petition. *Perkins v. Terminal R. Ass'n of St. Louis*, 340 Mo. 868, 102 S.W.2d 915 (banc 1937); *Maurizi v. Western Coal & Mining Co.*, 321 Mo. 378, 11 S.W.2d 268 (banc 1928). Also see Annot., Reference to Damages, 14 A.L.R.3d 541 (1967). *Wright v. Chicago, Burlington & Quincy Railroad Co.*, supra, relied upon by the defendant, is not authority to the contrary. In that case, the plaintiff's counsel in voir dire improperly attempted to commit the panelist to a verdict in a predetermined amount. The defendant's fifth point is denied.

The defendant next contends the trial court erroneously admitted mortality tables showing the plaintiff had a life expectancy of 44.54 years. This action is said to have been error because there was no evidence the plaintiff was disabled from working. This argument is unsound. There was evidence he suffered an injury that resulted in permanent, extensive impairment of vision in his right eye. This was sufficient foundation for evidence of the plaintiff's life expectancy. *Roderick v. St. Louis Southwestern Railway Co.*, 299 S.W.2d 422 (Mo.1957); *Harris v. Mound City Yellow Cab Company*, 367 S.W.2d 43 (Mo.App.1963). Nor did the trial court err in refusing to instruct the jury to limit their consideration of that evidence to the "medical claim." *Coulter v. Michelin Tire Corp.*, 622 S.W.2d 421 (Mo.App.1981).

The defendant's eighth point is based upon a statement in the plaintiff's closing argument. Upon cross-examination, the plaintiff had been asked, "No one has said to you that you are in any danger of losing your job with the Burlington, isn't that true?" He replied, "That's correct." In closing argument, plaintiff's counsel said, "Now two things are certain, as certain as death and taxes. Paul is not going to lose his railroad job until this trial is over." The trial court sustained the defendant's objection and instructed the jury to disregard this statement. It refused to declare a mistrial.

The plaintiff did not by this argument first inject into the case the retention of his job. After evidence of difficulties he encountered in performing his work, the plaintiff, without objection, testified concerning fear of losing his job. The evidence referred to provided a basis for that fear. A reasonable innuendo from the defendant's question and answer quoted above was to discount those difficulties and imply that the injury could not affect the plaintiff's ability to perform his job and to be retained. The plaintiff was not required to bear that innuendo without retaliation. *Pfiffner v. Kroger Grocer & Baking Co.*, 140 S.W.2d 79 (Mo.App.1940); *Paul v. Dun-*

*ham*, 214 S.W. 263 (Mo.App.1919). Plaintiff's counsel's statement can be construed as retaliatory and directed at that question and answer. However, that retaliation was not made in proper terms. The trial court did sustain an objection thereto. This court has been cited to no case which holds that the trial court was required to declare a mistrial. Again, the trial court was in the position to assess the impact of the fact the argument was not in proper terms of retaliation and the remedy required. The statement referred to is no more odious than an appeal to a jury "if you ever become a victim." *Blevins v. Cushman Motors*, 551 S.W.2d 602, 615 (Mo.banc 1977). This court cannot hold that, under the circumstances, the trial court abused its discretion in finding the admonition to the jury was sufficient relief. *Thompson v. Bi-State Transit System, Inc.*, 458 S.W.2d 903 (Mo.App.1970).

Defendant's contention the verdict is excessive requires a summary of the evidence concerning the plaintiff's injury and damages. In considering the issue, we must view the evidence in the light most favorable to the verdict disregarding all unfavorable evidence to the contrary." *Koehler v. Burlington Northern, Inc.*, 573 S.W.2d 938, 945 (Mo.App.1978).

At the time of the injury, the plaintiff was an unmarried 30-year-old man. He had a high school education. After leaving the Navy and before he was employed by the defendant, the plaintiff had worked on six or seven jobs for a relatively short period of time. It may be surmised the jobs involved manual work and did not require or provide training.

In March, 1976, the plaintiff was employed by the defendant on a steel bridge crew. He was working on that crew at the time of his injury on September 6, 1978. At that time, he was paid $6.89 per hour. He was off work 6½ weeks by reason of his injury. At the time of the trial on October 19, 1981, he was still working at the same job. His hourly rate was $9.71.

When he was a child, the plaintiff's eyes were crossed. This condition was corrected by the use of glasses by the time the plaintiff was in the sixth grade. At the time of the injury his health and vision were good.

When the air hose came loose from the hammerdrill, the plaintiff received a severe blow to his right eye. It was very painful at the time. He was hospitalized for three days. Other than the repair of the external injury, there was nothing that could be done. He recuperated at his home. After a period of time, the pain subsided.

As a result of the blow, the lens of the plaintiff's right eye was knocked from its normal position. At the time of the trial it was resting in the vitreous cavity in the bottom of the eyeball. It cannot be restored to its proper position. The function of the lens is to focus an image upon the retina. The plaintiff's unaided vision in his right eye has been expressed as 20/800, or the ability to count fingers on a hand at a distance of 2 feet. By the use of a special contact lens, his vision by that eye of an object 20 feet away is 20/25. The contact lens is focused upon an object 20 feet away. That focus is fixed. The vision of an object closer or more distant than 20 feet is blurred. The extent of the blurring is dependent upon how much closer or more distant is the object. The plaintiff was fitted with bifocal lenses to be used with the contact lens. However, the plaintiff was unable to successfully use these glasses.

The sphincter muscles of the iris of the right eye are paralyzed. These are the muscles that dilate or contract the pupil. Because they are paralyzed, the pupil remains fully dilated. The pupil in the right eye is 8 millimeters in diameter compared to 4 millimeters in the left eye. A photograph demonstrates the difference in the two eyes is marked and quite apparent. The image perceived through the right eye is 8–10 percent larger than the image perceived through his left eye. At times he has double vision. Through the right eye he sees a halo around lights. His night vision is poor. Bright sunlight is painful and it causes headaches. He can read only with his left eye and only for a short period of time. He has poor depth perception.

Because of his injury, he has a predisposition to three complications in his right eye. These are glaucoma, a detached retina and the deterioration of the lens. Each of the complications is subject to treatment with varying probabilities of success. The examining ophthalmologist noted, "It is probable that Mr. Bender in the past had some minimal muscle imbalance which may have become slightly worse because of his zanisekonia." He also observed the plaintiff had a condition of exotropia; that is, when he was looking at something close, his eyes turned out slightly. The condition was worse when the plaintiff was fatigued. However, during the examination by that witness, the condition did not pose a significant problem.

The injured eye causes the plaintiff so much difficulty that at times he feels he would be better off had he completely lost vision in that eye. He is preoccupied with fear that something might happen to his left eye. His difficulties at work have been previously noted. He feels incompetent. He is afraid he will lose his job. He worries that he could not find another. He is very conscious of his distorted appearance. He is uncomfortable with new people. He has virtually stopped dating. He has all but eliminated his prior recreational activities, such as water skiing, tennis and camping. A clinical psychologist related the plaintiff's condition as being a withdrawn, self-conscious individual, full of fear, to his injury.

In determining the issue of excessiveness in the light of this evidence, this court must adhere to well established legal precepts. These precepts have been succinctly summarized.

Among factors which bear on whether a verdict is excessive vel non are: (1) Plaintiff's loss of income and the reasonably anticipated future loss of income because of the injuries sustained; (2) the amount of hospital, medical and other similar expenses plaintiff has incurred and is reasonably liable to incur in the future; (3) plaintiff's age; (4) the nature and extent of plaintiff's injuries, the permanency thereof and how such injuries have, and will in the future, affect plaintiff's ability to work and ability to participate in the usual activities of general living and enjoyment; (5) due regard for economic factors, such as inflation; (6) awards given and approved in cases of a similar nature; and (7) an appreciation of the fact the jury and trial court had a superior opportunity to appraise plaintiff's injuries and other damages. *Tennis v. General Motors Corp.*, 625 S.W.2d 218, 229 (Mo.App.1981).

In applying these precepts, this court must consider that the jury's reasonable conclusions could have included the following. The plaintiff sustained a serious, permanent impairment of vision in his right eye at the early age of 30. But for the possibility of loss of vision in his left eye, the plaintiff might be better off if he had totally lost vision in the right eye. The injury has created a condition that predisposes him to the complications noted. His ability to perform his work on the steel bridge crew has been substantially reduced. He is handicapped in the performance of any manual work requiring coordination. By training, the plaintiff is limited to manual work. His earning capacity has been substantially impaired. The injury has diminished his ability to participate in life's usual activities and his enjoyment of life. He has suffered a psychological change and has become withdrawn, self-conscious and full of fear.

Cases dealing with allegedly comparable injuries are cited to establish whether the verdict is or is not excessive. The verdict must be considered with due regard to these cases. However, that consideration should recognize that each case must stand or fail on its own facts. *Chism v. White Oak Feed Co., Inc.*, 612 S.W.2d 873 (Mo.App.1981). That consideration must also take into account the ravages of inflation. *Tennis,* supra. The importance of this factor is demonstrated by two cases. In *Coffman v. St. Louis-San Francisco Railway Company*, 378 S.W.2d 583 (Mo.1964), the Supreme Court reduced an award to a 16-year-old quadriplegic from $270,000 to

$220,000. In *Chrisler v. Holiday Valley, Inc.,* 580 S.W.2d 309 (Mo.App.1979), the Missouri Court of Appeals affirmed a verdict of $2,300,000 for a 17-year-old quadriplegic. This factor has become so important it has been said "cases decided some six years or more before the present action was jury-determined should not be considered in applying the rule of uniformity." *Tennis,* supra, at p. 230. It must also be recognized that a case which approved a verdict as not being excessive is not necessarily authority that a greater verdict would be excessive.

Three Missouri cases dealing with visual impairment must be noted. In *Griffith v. St. Louis-San Francisco R. Co.,* 559 S.W.2d 278 (Mo.App.1977), a verdict of $150,000 for impairment of vision in one eye to a 38-year-old man was held not excessive. In *Bine v. Sterling Drug, Inc.,* 422 S.W.2d 623 (Mo.1968), a man 54 years of age suffered virtual loss of vision in one eye and some impairment in the other eye. The trial court reduced a verdict for $175,000 to $125,000. The Supreme Court found the latter figure not excessive. In *Krug v. Sterling Drug, Inc.,* 416 S.W.2d 143 (Mo. 1967), a still employed dental laboratory technician who suffered severe loss of vision in both eyes was awarded a verdict of $125,000. The Supreme Court held that amount was not excessive. Because of the factors previously mentioned, this court does not regard those cases as authority that the verdict of $750,000 is excessive.

Each party cites *Stineman v. Fontbonne College,* 664 F.2d 1082 (8th Cir.1981). In that case in 1976, a freshman college student who was deaf suffered the loss of one eye. She was awarded a verdict of $800,-000. The court acknowledged its duty to look to the forum state's case law for guidance on the question of excessiveness. It cited *Bine* and *Griffith.* It noted the jury verdict in question was "$650,000 greater than the largest verdict sustained in those cases, a variance that seems excessive on its face." *Stineman,* supra, at p. 1089. With one of the three judge panel dissenting in such action, the court ordered a remittitur of $200,000.

It must also be noted that in *Anderson v. Burlington Northern Railroad Company,* 651 S.W.2d 176 (Mo.App.1983), the jury awarded the plaintiff $1,067,000 for the loss of an eye. That case was reversed because of trial error. The appellate court did not reach the issue of excessiveness.

While they are not a part of the doctrine of uniformity, cases involving similar injuries in other jurisdictions are worthy of observation. Some of these cases have been cited to this court. Independent research has revealed others. Such cases considered by this court include the following. In *Bevevino v. Saydjari,* 574 F.2d 676 (2nd Cir. 1978), the plaintiff was injured in 1973. In addition to his other injuries, as a result of malpractice, he lost an eye. He suffered emotional problems similar to those of the instant plaintiff. A judgment for $550,000 for that loss was approved. In *Penetrante v. United States,* 604 F.2d 1248 (9th Cir. 1979), in 1977, the plaintiff lost the sight in one eye and suffered impairment of vision in the other. The court found that a verdict for $900,000 was neither shocking nor erroneous. In *Richards Mfg. Co. v. Aspromonte,* 557 S.W.2d 543 (Tex.Civ.App.1977), a former professional athlete, 38 years of age, was hit in the eye by a battery cap. He lost vision in that eye. There was some change in the other eye. He had psychological changes and worry about the loss of the other eye. No loss of wages or earning capacity is mentioned in the opinion. A verdict of $675,000 was approved. In *Cezeaux v. Libby,* 539 S.W.2d 187 (Tex.Civ.App. 1976), in 1972, an insurance company executive, 44 years of age, was undergoing surgery on his eye to remove a buckle by which the retina of that eye had been reattached. During surgery, because of inadequate anesthesia, he partially roused. As a result he lost the vision of the impaired eye. He also had substantial difficulties and psychological problems similar to those of the instant plaintiff. The court found that a verdict for $500,000 for that loss was not excessive. In *Danaher v. Partridge Creek Country Club,* 116 Mich.App. 305, 323 N.W.2d 376 (1982), in 1975, a weather stripper and caulker with a life expectancy of 18.97

years lost an eye. He had lost wages of $1,875 and medical expenses of $4,000. The appellate court found that a verdict for him in the amount of $1 million was not excessive. The trial court reduced the award under the comparative negligence doctrine.

 The assessment of damages is primarily the function of the jury. *McGowan v. Hoffman,* 609 S.W.2d 160 (Mo.App. 1980). This court is authorized to order a remittitur only when the verdict is "so grossly excessive that it shocks the conscience of this court and convinces us that both the jury and the trial court abused their discretion. We will exercise our power to interfere with their judgment with caution and only where the verdict is manifestly unjust." *Koehler v. Burlington Northern, Inc.,* supra, at p. 946. The instant verdict is at the upper limit of reasonableness. But, under the mandate of the precepts cited and the evidence of the extent and consequences of plaintiff's injury, this court is not convinced that the jury and trial court abused their discretion. The judgment is affirmed.

PREWITT, J., concurs.

HOGAN, J., concurs in a separate opinion.

HOGAN, Judge, concurring.

With great deference to my colleagues, I concur specially only to indicate I believe the court should not foreclose itself in all conceivable circumstances by saying the amount of this verdict is at the upper limit of reasonableness. In so doing, I do not mean to disown or deny this court's power to order a remittitur when the verdict seems to be aberrant or is so grossly excessive as to indicate bias and prejudice of some order on the part of the jury. I merely say one can easily conceive circumstances in which the loss of an eye might cause injuries justifying a greater award.